Argued August 18, reversed and remanded for a new trial September 26, 1977

## STATE OF OREGON, *Respondent,*
*v.*
## MARKO JAMES MATTHEWS, *Appellant.*
## (No. MT 1521, CA 8339)

569 P2d 662

Ronald E. Hergert, Oregon City, argued the cause for appellant. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

Defendant was charged with attempting to elude a police officer, ORS 487.555, and resisting arrest, ORS 162.315. He was acquitted of resisting arrest but was convicted of eluding. The court imposed a suspended sentence, defendant was placed on one year's probation, ordered to pay a fine of $100, and his driver's license was suspended pursuant to ORS 482.430(2)(a). He assigns as error the failure of the trial court to submit to the jury upon timely request the issue of justification based upon necessity.

Defendant is entitled to have the jury instructed on all issues of law arising from the evidence and to present his own theory of the case where that theory is supported by the evidence. *State v. Jennings,* 131 Or 455, 282 P 560 (1929); *State v. Suggs,* 13 Or App 484, 511 P2d 405 (1973); *State v. McWilliams,* 29 Or App 101, 562 P2d 577, Sup Ct *review denied* (1977). However, whether the evidence entitles defendant to a jury instruction on a particular defense is governed by the statutory requirements for establishing that defense. *See, State v. Burns,* 15 Or App 552, 556-7, 516 P2d 748, Sup Ct *review denied* (1974).

The statute which creates the defense of necessity, ORS 161.200, provides in pertinent part:

"(1) * * * conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"* * * * *"

The official commentary to the 1971 Oregon Criminal

Code provides some insight into the purpose behind the statute:

> "Subsection (1) of this section is designed to allow the balancing of the injury which the actor sought to prevent against the injury which he caused. (See Model Penal Code, Tent, Draft, No. 8, at 5-10 (1958)).[1] Examples of its application would include blasting buildings to prevent a major fire from spreading, breaking into an unoccupied rural house in order to make an emergency telephone call to save a person's life or forcibly restraining a person infected with a highly contagious and dangerous disease." Commentary, at 20.

It appears from the commentary and the language of the statute that in order to be entitled to an instruction on necessity, defendant must show some evidence in the record to meet three tests: (1) whether his conduct was necessary to avoid a threatened injury; (2) whether the threatened injury was imminent; and (3) whether it was reasonable for defendant to believe that the need to avoid that injury was greater than the need to avoid the injury which the "eluding" statute seeks to prevent.

■ ■    Whenever evidence relating to the defense of justification is raised by a defendant, it is for the lower court at trial and for this court on review to determine whether that evidence entitles him to a jury instruction. However, it is for the jury to determine the weight of that evidence in establishing the defense. If there is any evidence in the record from which the jury could infer the required elements of justification, the issue should be submitted to them. We conclude from a review of this record that there was evidence from which the jury could infer justification under the statute.

Defendant's version of the incidents leading up to

---

[1] ORS 161.200 is apparently based upon a similarly worded provision of the Model Penal Code and the New York Penal Code. The New York courts have applied their "choice of evils" statute to two cases involving traffic offense arrests. *See People v. Moore,* 346 NYS 2d 363 (1973); *People v. Cataldo,* 316 NYS 2d 873 (1970). In *Moore,* the defense was applied under circumstances not dissimilar from those in the present case.

his arrest was as follows. At about 1:00 a.m., defendant was stopped by a deputy sheriff for speeding. He admitted to the officer that he was speeding and apologized for doing so. Defendant explained that he was in a hurry to get home to check his mother who had been ill that day. After the officer requested his driver's license, defendant indicated that he had left it at his home. He gave the officer his vehicle registration and requested that he phone defendant's mother at home to verify that he was a licensed driver. The officer went to his patrol car and remained there for several minutes, but apparently did not call defendant's mother.

When the officer returned to defendant's vehicle, he told defendant that he had "run" his license on the computer, and that defendant was lying and did not have a driver's license. Defendant replied that he did, and the officer poked him in the chest and repeated that he was lying. Defendant testified as to the exchange that followed:

Q: "At some point did your vehicle door come open on your side?

A: "Yes it did.

Q: "Who opened that door?

A: "The police officer did.

Q: "What did he do after he opened the door?

A: "*He slapped me in the mouth. He started slapping me in the face, poking me in the chest.* I went like this—I reared back like this down in the seat, *and he starts gouging me with his hands.*

Q: "Did you say anything to him at that point?

A: "Yes I did.

Q: "What did you say?

A: "I said 'What in the hell is the matter with you?'

Q: "Then how did he respond to that?

A: "Well, he kind of backed off then. I said 'Why are you doing this to me?' I said 'I haven't done nothing wrong, I am not lying to you.' I said 'I do have a license.' "
(Emphasis added.)

The officer returned to his patrol car and remained

there several minutes longer. As far as defendant could tell, the officer still had not written a traffic citation. Another heated exchange followed:

Q: "At some point did you get out of your vehicle?
A: "Yes I did.
Q: "What did you do then?
A: "I walked back and I asked him if he would please give me the ticket so I could go home and check on my mom.
Q: "And what did he say?
A: *"He said 'You're not only going to get one ticket,' he says, 'but you're going to get two,' he said, 'but that's not all you are going to get,' he told me.*
Q: "And what did you do?
A: "I said 'Just give me the ticket, please, just let me have the ticket.' He said 'You just stay right here.'
Q: "And what did you do?
A: "And I said 'I am going to go on home.'
Q: "And what did you do?
A: "I got in my truck and drove off." (Emphasis added.)

Defendant stated that when he drove off in his vehicle he intended to run away from the officer because of the officer's physical and verbal abuse. Chased by the officer, defendant drove twelve miles to the home of an acquaintance where another confrontation took place and shoves were exchanged between defendant and the officer. Defendant testified that the officer finally struck him with a flashlight without provocation before he was arrested and taken to jail.

■ Weighed against the urgency defendant perceived in allegedly avoiding another assault and returning home to his ailing mother is the desirability of avoiding whatever injury was to be prevented by the eluding statute, ORS 487.555. The statute provides:

"(1) A driver of a motor vehicle commits the crime of fleeing or attempting to elude a police officer if, when given visual or audible signal to bring the vehicle to a stop, he knowingly flees or attempts to elude a pursuing police officer.

"(2) The signal given by the police officer may be by hand, voice, emergency light or siren.
"* * * * *"

This statute, a part of the vehicle code, is designed to implement the authority for a police officer to stop a motorist on the highway. Based upon the evidence, a jury could determine according to ordinary standards of intelligence and morality that avoidance of an allegedly imminent assault by a police officer and further delay returning to care for defendant's mother outweighed avoidance of the injury the statute was designed to prevent. The court erred in refusing defendant's requested instruction.

Reversed and remanded for new trial.