Argued and submitted November 26, 2002, affirmed March 6, 2003

# STATE OF OREGON,
## *Respondent,*

*v.*

# STEVEN RANDALL MARSH,
## *Appellant.*

## 99-1296; A113013

64 P3d 1141

Daniel M. Carroll, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Christina M. Hutchins, Assistant Attorney General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

Armstrong, J., dissenting.

**LANDAU, P. J.**

■    Defendant appeals a judgment of conviction for possession of a controlled substance. ORS 475.992(4)(a). He assigns error to the trial court's refusal to give a "choice of evils" jury instruction. The state asserts that the evidence did not support such an instruction. We agree with the state and affirm.

■■    "We review a trial court's refusal to give a requested jury instruction for error as a matter of law," *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996), and we review "the evidence in support of the instruction in the light most favorable to defendant, the party seeking the instruction," *State v. Dollar*, 181 Or App 354, 356, 45 P3d 1014 (2002).

After a two-week absence, defendant returned home at approximately 11:00 a.m. with two companions to find the aftermath of a party that apparently had been held by his teenage sons. As he cleaned up, he found a bag containing 26 grams of hashish. He took it outside to throw it in the dumpster. On his way outside, he encountered a police officer approaching to arrest him on an unrelated charge. Defendant tossed the baggie to his companion. The officer retrieved the baggie and arrested defendant. Defendant was charged with possession of a controlled substance.

At trial, defendant testified that he wanted to get rid of the drugs because he "did not want the kids to be—to use them or have them or anything to do with them" because he was concerned that the drugs "would hurt them" and "ruin[ ] their lives." He did not know where his sons were. He hoped, but did not know, that they were at school.

■    Defendant requested that Uniform Criminal Jury Instruction 1103, regarding choice of evils, be delivered to the jury. The instruction read, in part:

"Conduct that would otherwise constitute an offense is justifiable and not criminal when:

"(1) The defendant's conduct is necessary as an emergency measure to avoid an imminent threatened injury; and

"(2) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of the defendant's avoiding the injury clearly outweigh the desirability of avoiding the injury or consequences sought to be prevented by the law which makes [*insert charged crime*] a crime."

(Emphasis in original.) The choice of evils instruction is based on ORS 161.200(1):

"Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

This court has interpreted the statute as requiring "evidence that (1) a defendant's conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for the defendant to believe that the threatened injury was greater than the potential injury of his illegal actions." *State v. Seamons*, 170 Or App 582, 586, 13 P3d 573 (2000). The trial court has a screening function in determining whether the evidence is sufficient to send the choice of evils question to the jury:

"When a defendant raises the choice of evils defense, the trial judge must determine whether the evidence satisfies those requirements before the court can submit the issue to a jury. If there is evidence from which the jury could find that each requirement has been met, then the court must submit the defense. It is for the jury to determine the weight of the evidence and to decide whether the defense has been established."

*State v. Troen*, 100 Or App 442, 445-46, 786 P2d 751, *rev den*, 310 Or 791 (1990), *cert den*, 501 US 1232 (1991).

■    In this case, there is no evidence from which a jury could infer that defendant faced a threatened injury that was in any way *imminent*. The only threatened injury that defendant identified was the possibility that his sons might decide to smoke the hashish. Even assuming for the sake of argument that that possibility is a "threatened injury" within the meaning of the statute, there is no evidence of its imminence. An "imminent" threat, for the purposes of determining whether to deliver a choice of evils instruction, is one that is "immediate, ready to take place, or near at hand." *State v. Taylor*, 123 Or App 343, 348, 858 P2d 1358 (1993). A threat of future harm does not suffice. *State v. Whisman*, 33 Or App 147, 150, 575 P2d 1005 (1978) ("a threat of future injury [is] insufficient"). The threat must exist at the time of the commission of the offense. *State v. Boldt*, 116 Or App 480, 483-84, 841 P2d 1196 (1992) ("In order for a threatened injury to be 'imminent' under either ORS 161.200 or ORS 161.270, the threat must exist at the time of the commission of the charged offense.").

In this case, defendant knew nothing about the whereabouts of his sons. He did not know whether they were in school or someplace else. There is no evidence that he had any idea when they would return to the house. Indeed, there is no evidence that he knew whether they would return to the house that day at all. He merely feared that, if they returned at some point in the near future, they might see the drugs and that, if so, they might use them. Thus, the threat to defendant's sons was not "immediate, ready to take place, or near at hand." *Taylor*, 123 Or App at 348.

The dissent insists that a jury could infer that, because defendant's sons "could have returned home at any time," a jury could find that "without defendant's intervention, they could have consumed the hashish promptly after defendant found it." 186 Or App at 618 (Armstrong, J., dissenting). There are at least two problems with the dissent's argument.

First, not even defendant argues that he was concerned about the "prompt" return of his sons. Nowhere in the transcript is there any testimony that he was concerned that they could have returned immediately upon his discovery of

the drugs. He testified that he wanted to throw the drugs away so that the boys would not have "access to the drugs if they were left in [the] house." That is all.

Second, the inference that the dissent attempts to draw—that, in fact, defendant's sons could have returned home any minute—is drawn from an evidentiary vacuum. There is no evidence at all concerning the whereabouts of defendant's sons, whether they were at school, at a friend's house, or anywhere else. There is no evidence from which it could be inferred that they were coming home at all, much less that they were coming home "promptly" at 11:00 a.m.

The dissent also contends that the jury could have found other elements of the defense, but, because we conclude that there was no evidence that any threatened injury was imminent, we need not address those contentions.

The trial court did not err in refusing to deliver the choice of evils instruction.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that the trial court properly refused to give defendant's requested "choice of evils" instruction. It reasons that the threatened injury against which defendant purportedly acted—the consumption of hashish by his sons—was not imminent because defendant did not know when his sons would return home and consume the hashish. Because the choice of evils defense under ORS 161.200 applies only to actions undertaken to avoid an imminent injury, it concludes that the court properly refused to instruct the jury on the defense. I respectfully dissent. I believe that there is evidence in the record from which a jury could have found facts that satisfied the requirements of the defense. I therefore believe that the court erred in refusing to give the requested instruction.

Defendant testified that he took possession of the hashish that he found in his home in order to destroy it and thereby prevent his teenage sons from consuming it. One of the sons testified that the hashish was, in fact, his, so the jury could have found that defendant's concern was well founded.

Defendant did not know where his sons were and, hence, did not know when they would return home. According to the majority, it follows that the jury could not have found that the threatened consumption of the hashish was imminent, so the choice of evils defense did not apply to defendant's act of taking possession of the hashish to destroy it and prevent the threatened consumption.

The majority is wrong. Defendant's teenage sons lived in defendant's home. Because of defendant's work schedule, he generally was home only on weekends. He testified that he found the hashish sometime after 11:00 a.m. on Monday, March 15, 1999, when he returned home after a two-week absence. He hoped that his sons were in school at that time, but he did not know if they were. Based on that evidence, the jury could have found that defendant's sons could have returned home at any time, which means that, without defendant's intervention, they could have consumed the hashish promptly after defendant found it. Because the sons could have consumed the hashish promptly after defendant found it, the jury could have found that the threat of that consumption was an imminent threat and that defendant reasonably believed it to be an imminent threat. Consequently, the jury could have found that the injury against which defendant purportedly acted was an imminent injury.

The jury could have found that the other elements of the defense were satisfied as well. If defendant's testimony were believed, he had to do something with the hashish. He could not simply leave it where he had found it. Further, the jury could have found that defendant's act of taking possession of the hashish in order to destroy it was an emergency measure that was appropriate for him to take, based on the standard established by ORS 161.200 for the choice of evils defense. Under that standard, the action that defendant took—taking possession of the hashish—was justified and not criminal if, "according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding" the consumption of the hashish by defendant's sons "clearly outweigh[ed] the desirability of avoiding the injury sought to be prevented by the statute" that makes hashish possession unlawful. Because I believe that the jury could have found that defendant's conduct met that standard, defendant was

entitled to have the jury instructed on his choice of evils defense. I respectfully dissent from the majority's contrary conclusion.