Argued and submitted December 21, 2011, affirmed May 15, 2013

STATE OF OREGON,
*Plaintiff-Respondent*,

*v.*

ASHLEY MARIA DAWN ONEILL,
aka Ashley Maria Daw O Neil,
aka Ashley Maria Dawn O Neil,
aka Ashley Maria Dawn Fackler,
*Defendant-Appellant*.

Multnomah County Circuit Court
081255480; A143742

303 P3d 944

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant was convicted of escape in the third degree, ORS 162.145(1), for fleeing the custody of arresting officers. On appeal, she assigns error to the trial court's refusal to give a jury instruction on the choice of evils defense when there was evidence that she perceived an imminent threat of sexual abuse by the officers. For the reasons that follow, we affirm.[1]

We review a trial court's refusal to give a jury instruction for legal error and state the facts that support giving the instruction in the light most favorable to the party who requested it. *State v. Nebel*, 237 Or App 30, 32, 238 P3d 423, *rev den*, 349 Or 370 (2010).

Defendant was arrested on an outstanding warrant by two male officers, Deputy Derry and Officer Garrison, around 9:00 p.m., in a residential neighborhood. Derry told defendant that she was under arrest and Garrison placed her in handcuffs. As Derry escorted defendant to the police car, she began screaming that he was hurting her and trying to rape her. Defendant then broke free from the officers and started running down an alleyway until Derry caught her. Defendant, visibly irate, told Derry that she was afraid to be searched by a male officer and wanted a female officer.[2] When Derry asked defendant why she ran, defendant replied that she had been sexually abused in the past and was afraid that it would happen again. Based on her flight, defendant was charged with third-degree escape.

At trial, defendant offered the testimony of a psychologist, Dr. Frehling, who had evaluated defendant. Frehling explained that defendant had been diagnosed with post-traumatic stress disorder (PTSD), and that PTSD causes people to be afraid for their lives or safety and to believe that

---

[1] Defendant also assigns error to the trial court's refusal to give Uniform Criminal Jury Instruction (UCrJI) 1023, "Defendant's Prior Convictions," or an amended version of it. We reject that assignment of error without discussion.

[2] Officer Derry testified that it is standard practice to search suspects before placing them in the back seat of the police car, and that, whenever possible, an officer of the same sex as the suspect is called to the scene to conduct the search. In this case, Derry called for a female officer upon defendant's request.

the underlying traumatic events are recurring even though they might not be. Frehling explained that false perceptions can easily trigger a fight or flight response that is not necessarily "a realistic response" or "what's required of the situation." According to Frehling, defendant may have felt threatened during the arrest, causing her to experience a flight or fight response that compelled her to get away from the threat.

In light of the foregoing evidence, defendant requested a jury instruction based on ORS 161.200, the statutory choice of evils defense, on the ground that her conduct was necessary as an emergency measure to avoid imminent injury by the officers.[3] Defendant argued that a reasonable person with defendant's history—that is, someone with PTSD and who was a victim of sexual abuse—would have perceived an imminent injury and fled to protect herself. The court declined to give the instruction for lack of any evidence to support it.

On appeal, defendant assigns error to the trial court's refusal to give the choice of evils jury instruction when the record contained evidence that she believed the arresting officers were going to sexually assault her. The state responds that ORS 161.200 does not allow a defendant to raise a choice of evils defense "unless her actions were *in fact necessary* to avoid imminent injury—not merely that she *believed* that was the case." (Emphasis in original.)

A choice of evils defense is a defense of justification. A defendant is entitled to a jury instruction on a defense of justification if there is any evidence from which jurors could

---

[3] Defendant requested UCrJI 1103, which provides:

"The defense of choice of evils has been raised.

"Conduct that would otherwise constitute an offense is justifiable and not criminal when:

"(1) The defendant's conduct is necessary as an emergency measure to avoid an imminent injury; and

"(2) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of the defendant's avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the law that makes [escape in the third degree] a crime.

"The burden of proof is on the state to prove beyond a reasonable doubt that defense does not apply."

infer that the required elements of that defense are present and the proposed instruction correctly states the law. *State v. Smith*, 107 Or App 647, 651, 813 P2d 1086 (1991) (citing *State v. McBride*, 287 Or 315, 599 P2d 449 (1979)); *see also State v. Marsh*, 186 Or App 612, 615, 64 P3d 1141, *rev den* 335 Or 655 (2003) (establishing that trial court determines whether evidence is sufficient for a reasonable jury to find each requirement has been met); *State v. Matthews*, 30 Or App 1133, 1136, 569 P2d 662 (1977) ("Whenever evidence relating to the defense of justification is raised by a defendant, it is for the lower court at trial and for this court on review to determine whether that evidence entitles him to a jury instruction."). If the court determines that the evidence supports giving the instruction, then the jury determines the weight of the evidence and whether the defense has been established. *Marsh*, 186 Or App at 615.

The justification instruction that defendant requested—a choice of evils instruction—is available when a defendant presents any evidence from which a jury could infer that the requirements of ORS 161.200 are met. *Matthews*, 30 Or App at 1136. ORS 161.200 provides:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

We have summarized ORS 161.200 to require evidence that:

> "(1) a defendant's conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for the defendant to believe that the threatened injury was greater than the potential injury of his illegal actions."

*State v. Seamons*, 170 Or App 582, 586, 13 P3d 573 (2000).

On appeal, the parties initially frame the issue as whether ORS 161.200 requires an *actual* threat of injury or can be interpreted to include a defendant's mere *perception* of a threat of injury. According to defendant, the statutory choice of evils defense is broad enough to encompass a situation in which, in light of defendant's particular circumstances, namely PTSD and a history of being sexually assaulted, she "reasonably believed" that threatened injury was imminent, thereby justifying her conduct in fleeing from the police. In support of that understanding of the defense, defendant does not point to any statutory language in ORS 161.200. Rather, defendant relies on judicial gloss—specifically, *State v. Brown*, 306 Or 599, 761 P2d 1300 (1988)—for the proposition that evidence of a perceived threat of injury is sufficient to raise the choice of evils defense under that statute.[4]

The state responds that, "[b]y its terms, ORS 161.200 allows the [choice of evils] defense only when conduct 'is necessary' to prevent imminent injury," and not when a defendant "reasonably believes" that her action is necessary for that purpose. In support of its view of the statute, the state cites other justification defenses adopted at the same time as ORS 161.200 that expressly conditioned their application on a defendant's "reasonable belief" that the conduct was necessary to avoid imminent harm. It is telling, the state argues, that ORS 161.200 does not contain the same "reasonably believes" language as those contemporaneously enacted provisions. *See State v. Haugen*, 349 Or 174, 202, 243 P3d 31 (2010) (reasoning that the legislature's use of a qualifying term in one section and not

---

[4] Presumably, defendant's contention is that the Supreme Court's decision in *Brown* has somehow written language into ORS 161.200. *See Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) (applying presumption that a judicial interpretation of a statute is controlling unless legislature amends statute in any pertinent way).

another "demonstrates that the legislature knew how to use such a term but did not do so"). Alternatively, the state argues that, even if a defendant's "reasonable belief" is enough under the statute, the belief must be objectively reasonable. In the state's view, defendant's belief was not objectively reasonable under the circumstances.

Because it is the linchpin of defendant's argument and provides context for our analysis, we begin with the case law describing or applying ORS 161.200. In *Brown*, the Supreme Court considered the scope of ORS 811.180(1)(a), which provides an affirmative defense under the vehicle code. The provision, which is similar to ORS 161.200, provides an affirmative defense to the crime of driving while suspended when "[a]n injury or immediate threat of injury to a human being or animal, and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question." The question in *Brown* was whether that statute requires "that an injury or an immediate threat of injury to a human being *actually existed* or whether one of them *appeared to exist*." 206 Or at 605 (emphasis added). The defendant in *Brown* had argued on appeal that he was entitled to raise a necessity defense under ORS 811.180(1)(a) because the record contained evidence from which a jury could conclude that, based on a frantic phone call from his friend, the defendant drove while suspended because he reasonably believed at the time of the offense that his friend was in danger. *Id.* at 607.

The court held that, notwithstanding the defendant's later discovery that there was no actual emergency (his friend was not in danger), the evidence was sufficient to raise a jury question on both elements of the defense—*i.e.*, that "the defendant actually believed that injury or threat thereof existed and that the information available to the defendant was such as would cause a reasonable person so to believe." *Id.* at 606, 608. The court rejected the state's contention that ORS 811.180(1)(a) requires the existence of an actual threat, reasoning that the word "threat" itself implies something that has not yet happened, and that existence of an actual threat would often require speculation. *Id.* at 605. The court further reasoned that the "actual" test would be inconsistent with the purpose of ORS 811.180(1)(a), which

was to recognize "circumstances in which it is preferable that a person drive to effect a rescue than to refrain from driving because of the suspension"; a contrary reading of the statute "might dissuade a suspended driver from taking action to avert an emergency if the driver believes, but is uncertain, whether the injury or threat of injury exists." *Id.* at 605-06.

Although *Brown* did not interpret the choice of evils defense under ORS 161.200, it referenced and analogized that statute in a footnote:

> "The generalized necessity defense, ORS 161.200, to which the affirmative defense at issue is somewhat similar, expressly requires a similar balancing. To make out the defense, it must be established (inter alia) that '[t]he threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.'"

306 Or at 606 n 5 (quoting ORS 161.200).

We have since expressly relied upon *Brown* in the context of ORS 161.200. In *State v. Costanzo*, 94 Or App 516, 519-20, 766 P2d 415 (1988), we stated, rather broadly, that the "Supreme Court recently set the standard for submitting the affirmative defense of necessity to the jury in *State v. Brown*," and then cited *Brown* for the proposition that evidence is sufficient for a choice of evils defense if it permits the jury to infer that "defendant *reasonably believed* that each element of the defense existed." (Emphasis added.) Ultimately, we concluded in *Costanzo* that the choice of evils defense was available to the defendant because the jury could have inferred from the evidence that the defendant reasonably believed his passenger's medical situation presented a imminent threat of injury and that there was no alternative but to drive her to the hospital. 94 Or App at 520.

The state concedes that *Costanzo*, and its description of *Brown*, suggests a "reasonable belief" test for the choice of evils defense under ORS 161.200. However, the state argues that the text, context, and legislative history of ORS 161.200

compel a different conclusion, and that *Costanzo* incorrectly analogized the sufficiency of evidence standard under ORS 161.200 and ORS 811.180(1)(a).

It is not necessary to resolve the parties' competing contentions regarding whether a "reasonable belief" test has been incorporated into ORS 161.200 by way of case law, because we agree with the state's alternative argument.[5] Regardless of whether *Brown* or *Costanzo* could be read to incorporate a "reasonable belief" test into ORS 161.200, it would not help defendant here. The test described in *Costanzo* and *Brown* includes an objective component:

> "[A] defendant's perception of circumstances that constitute an injury or immediate threat thereof has to be reasonable in all the circumstances. We conclude that a defendant himself must reasonably have believed there to be such an injury or threat. To establish that reasonable belief, the defendant must be able to point to evidence in the record from which the jury could find that the defendant actually believed that injury or threat thereof existed *and that the information available to the defendant was such as would cause a reasonable person so to believe.*"

*Brown*, 306 Or at 606 (emphasis added). That "reasonable person" component of the test refers to a person of ordinary intelligence and understanding, not a person with the unique history or mental characteristics of any particular defendant. *See Powell v. Moore*, 228 Or 255, 262, 364 P2d 1094 (1961) ("The reasonable man represents the general level of community intelligence and perception and the jury, being a cross section of the community, should best be able to tell what that general level is."); *State v. Bassett*, 234 Or App 259, 264, 228 P3d 590, *rev den*, 348 Or 461 (2010) ("A defendant's subjective 'honest belief' that a perceived threat is great or imminent is not enough to justify his or her use of self-defense. * * * Determining a defendant's 'reasonable belief' from the perspective of an intoxicated person would contradict the objective 'reasonable person' standard that the defense demands."); *see also Kaseberg v. Davis Wright Tremaine, LLP*,

---

[5] Again, defendant does not point to any statutory language in ORS 161.200 that independently supports that notion; indeed, the plain text of the statute, as the state points out, requires that the conduct "is necessary," not "reasonably believed to be necessary."

351 Or 270, 278, 232 P3d 980 (2011) ("The discovery rule [for the statute of limitations] applies *an objective standard— how a reasonable person of ordinary prudence would have acted in the same or a similar situation*." (Emphasis added.)); *State ex rel Juv. Dept. v. Stephens*, 175 Or App 220, 225, 27 P3d 170 (2001) ("Regarding the standard for measuring the scope of a purported consent, the test is one of 'objective reasonableness'—that is, what a *typical* reasonable person would have understood the scope to be." (Emphasis added.)).[6] In other words, at the very least, ORS 161.200 requires that a defendant's perception of a threat be reasonable as gauged by an objective "reasonable person" standard, rather than a subjective, defendant-specific standard.

In this case, defendant presented no evidence that would have allowed a trial court to conclude that, based on the information available to her, she "reasonably believed" that threatened injury was imminent. All the evidence that defendant points to in support of a choice of evils defense concerns her particular mental state and personal history, which caused her to believe that the officers would assault her. That is, defendant argues that her perception of an imminent threat was reasonable *in light of her past traumatic experiences*, as explained by the psychologist, but she does not identify any circumstances that would have caused

---

[6] That is consistent with how the drafters of the Oregon Criminal Code understood a "reasonable person" test to operate under Oregon law. In *State v. Ott*, 297 Or 375, 386, 686 P2d 1001 (1984), the Supreme Court explained that, in the context of homicide committed under extreme emotional disturbance, the code's drafters had intentionally and expressly abandoned "present Oregon law" that uses a "reasonable man test without reference to the accused's circumstances or relevant personal characteristics":

"The Commission recognized *** that there is a need for establishing a standard to fix an average conduct to protect the general welfare. A purely subjective test would subtract from incentive to maintain self-control. The Commission chose an intermediate position:

"'The draft section also introduces a larger element of subjectivity, though it is only the actor's "situation" and "the circumstances as he believes them to be," not the defendant's scheme of moral values, that are thus to be considered. The ultimate test, however, is objective; there must be "reasonable" explanation or excuse for the actor's disturbance. Thus, the draft retains a certain degree of the objective standard but turns away from the present Oregon law which apparently gauges the accused's acts on a purely reasonable man test without reference to the accused's circumstances or relevant personal characteristics.'

Proposed Oregon Criminal Code, Final Draft and Report, July, 1970, p. 89."

a "reasonable person"—that is, a person of ordinary intelligence and understanding—to have perceived a threat under the same conditions.[7]

Viewed in the light most favorable to defendant, the record contains no evidence that the information available to her gave rise to an objectively reasonable belief of an imminent threat of injury by the officers. The trial court did not err in refusing to give a choice of evils instruction based on defendant's purely subjective belief that such a threat existed. *See Seamons*, 170 Or App at 586 (affirming the trial court's denial of a choice of evils defense because the defendant provided "no basis for an inference that the officer made any threats, much less a threat of imminent injury").[8]

Affirmed.

---

[7] For that same reason, defendant's reliance on our decision in *Matthews*, which also involved flight from an arresting officer, is unavailing. In *Matthews*, we reversed and remanded the defendant's conviction for eluding a police officer where the trial court refused to give a choice of evils instruction. 30 Or App at 1135. We considered testimony by the defendant that the officer accused him of lying, poked him in the chest, slapped him in the face, gouged him with his hands, threatened him, engaged in a 12-mile car chase, and then struck him with a flashlight without provocation. *Id.* at 1136-38. Based on that evidence, we concluded that a jury could determine that defendant was justified in avoiding an allegedly imminent assault by a police officer. *Id.* at 1139. Here, by contrast, defendant does not point to any facts that, if true, would support a reasonable belief that she faced an imminent threat of abuse by the officers.

[8] We are not called upon to decide, and we express no opinion on, the significance of a defendant's history of abuse or PTSD with regard to intent to commit a crime or any other potential defenses.