Argued and submitted March 22, 2019, affirmed June 16, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THEODORE EDWIN DART II,
*Defendant-Appellant.*

Union County Circuit Court
16CR64901, 17CR02656;
A165099 (Control), A165100

491 P3d 813

Defendant was convicted of two counts of second-degree criminal trespass and one count of third-degree criminal mischief, which occurred in connection with defendant attempting to stop neighbors from idling their semi-trucks. He appeals, assigning error to the trial court's ruling preventing him from presenting a choice-of-evils defense on one of the trespassing charges, and rulings excluding evidence. *Held*: The trial court did not err. Defendant failed to present sufficient evidence that his otherwise unlawful conduct was necessary, which is an element of the choice-of-evils defense. The trial court also correctly excluded as irrelevant the evidence at issue on appeal. Evidence of defendant's PTSD was not relevant because the harm in a choice-of-evils defense is to be judged by an objective reasonable-person standard, not by a subjective, defendant-specific standard.

Affirmed.

Russell B. West, Judge.

Mark Kimbrell, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Hannah K. Hoffman, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Affirmed.

## ARMSTRONG, P. J.

Defendant appeals his convictions in these criminal cases, which were consolidated for trial and appeal. In Case No. 16CR64901, the jury acquitted defendant of menacing (Count 1) and found him guilty of second-degree criminal trespass (Count 2). In Case No. 17CR02656, the jury found defendant guilty of third-degree criminal mischief (Count 1) and second-degree criminal trespass (Count 2). The cases were based on two occasions when defendant took action in relation to diesel-engine "semi-trucks" that neighbors had left running on their property for extended periods of time.

On appeal, defendant first assigns error to the trial court's failure to give his requested choice-of-evils jury instruction on the second-degree criminal trespass charge (Count 2) in Case No. 16CR64901.[1] In his second assignment, which is related to the first, he assigns error to the trial court's pretrial ruling that, for the charges in Case No. 16CR64901, the jury could not consider evidence of two statutes that relate to limits on commercial-vehicle-engine idling. Defendant argues that the evidence was relevant to the choice-of-evils defense that he should have been allowed to present on Count 2. In his third assignment, he challenges the trial court's exclusion of evidence concerning defendant's post-traumatic stress disorder (PTSD), which he contends was relevant to his choice-of-evils defense for all counts and also relevant to whether he had the required mental state for third-degree criminal mischief. We affirm.

Because defendant's assignments of error address pretrial rulings on whether defendant would be allowed to

---

[1] ORS 161.200 establishes the choice-of-evils defense. That statute provides, in relevant part:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

present a choice-of-evils defense for each of the two incidents, including rulings excluding evidence on the basis of relevance and declining to give a requested jury instruction, we recount the pertinent evidence in the record as of the time that the court made those rulings.[2] We view the evidence in support of the choice-of-evils defense in the light most favorable to defendant. *State v. Payne*, 366 Or 588, 607, 468 P3d 445 (2020) ("[A] reviewing court must view the evidence in the light most favorable to the party requesting the instruction.").

Defendant lives in a residential neighborhood in a small town in Oregon. Some of the residents in defendant's neighborhood have diesel-engine semi-trucks that they sometimes start up and leave running for a period of time. Defendant and his housemate, Hill, are bothered by the noise and smell from the idling trucks. Defendant is particularly affected by the sound and smell of the idling diesel trucks due to PTSD that he suffers because of an accident at sea in which he had to cling to a barrel of diesel fuel for 31 hours. Defendant has tried to speak with the neighbors[3] to ask them to stop idling their trucks, has informed them that they are violating the law by idling their trucks for long periods of time, and has sought enforcement of those laws by reporting the issue to local law enforcement officials.[4] In addition, he has brought the issue to the attention of the city

---

[2] After the close of the evidence, defendant made an objection "for the record" to the trial court refusing to give a choice-of-evils jury instruction as to the charges in Case No. 16CR64901. He made no argument, however, that the evidence admitted at trial had changed in any way the evidence bearing on the court's pretrial rulings, nor did he argue that the trial court had previously analyzed the issue incorrectly. The court told defendant that he had made his record. Accordingly, we focus on the state of the evidence before the court when it made its pretrial rulings.

[3] We use the term "neighbors" loosely to reflect that the properties are close to each other. The owners of the property involved in Case No. 16CR64901, Gregg and Davidson, live diagonally across from defendant, and the owner of the truck involved in Case No. 17CR02656, Wisdom, lives across an alley from defendant. Defendant has complained about other neighbors who also have large trucks.

[4] In his brief, defendant cites ORS 825.605 and ORS 825.610. Those statutes provide that commercial vehicles may not idle for more than five minutes in a continuous 60-minute period, except in certain circumstances. In his offer of proof, defendant stated that "[t]here's a ton of state laws and ORS's and DEQ laws, environmental quality laws that regulate these trucks besides the CDL of DOT." Defendant also noted that there are numerous "No Trucks" signs in the neighborhood.

council. On two occasions, as relevant here, defendant engaged in conduct that led to criminal charges against him.

Before trial, defendant made an offer of proof for the trial court to determine whether he would be able to present evidence to support a choice-of-evils defense and have the jury instructed on the defense. Defendant and Hill testified as part of the offer of proof.

Defendant testified that, in January 2016, defendant approached a neighbor, Gregg, who had recently moved in. Defendant introduced himself, and said, "By the way, I've got a problem with your truck and here's an ordinance and all these rules that you're supposed to abide by." In response, he "got *** a verbal assault with some foul language," and Gregg said that he was "going to be [defendant's] nightmare neighbor."

Case No. 16CR64901 is based on an October 5, 2016, incident involving Gregg's truck. On that occasion, according to defendant, Gregg's truck, which was parked less than 150 feet from defendant's bedroom, was started at 4:45 in the morning. It was still idling 45 minutes later. Defendant went onto Gregg and Davidson's property and knocked on the front door of the house. No one answered, so he knocked harder. Then both Gregg and Davidson came to the door. Defendant testified that his purpose in going to their house was "[t]o get them to be a good neighbor. To, you know, abide by the laws. I quoted the laws [to] them again and asked them to please shut the truck off or please move it right now." Gregg told defendant to leave, and defendant responded that he would, "but you need to shut your truck off and you need to abide by these laws."[5] According to defendant, "this is probably about the fifteenth time that they've

_____

[5] Defendant includes in his briefing and argument evidence that was adduced at trial—that, in April 2016, he had been told by a sheriff's deputy not to enter Gregg and Davidson's property. But, on appeal, we view the evidence that was before the trial court at the time that it made the pretrial ruling on the availability of the defense. Defendant's offer of proof did not include evidence that he had previously been "trespassed" from the property. Rather, defendant's offer of proof included only Gregg telling defendant to leave after defendant was on the porch, after which defendant initially refused to leave and continued to urge Gregg to turn off the truck or to move it somewhere else. Defendant also did not make any argument concerning the April 2016 communication when he made his later objection "for the record" at the end of the trial.

been requested to be a good neighbor." After that, Gregg and Davidson stepped out onto their porch, and Gregg pushed defendant off the porch. Defendant landed in some landscaping rocks. According to defendant,

> "that's when I jumped up with a rock *** in my left hand. Because I didn't know what was happening. I never expected them to do that.
>
> "And I was just; I had a rock in my left hand. I'm right-handed.
>
> "* * * * *
>
> "I'm [a] totally nonviolent person.
>
> "* * * * *
>
> "I was tossing it up in the air in my left hand to see what was going on with them, because, you know, I didn't know if they had a weapon or what."

Defendant dropped the rock and walked away. Defendant denied that he had threatened anyone with the rock and said that he was defending himself.

When asked about the harm that he had been experiencing from the truck idling before he went over to Gregg and Davidson's property, defendant said that he woke up "in a panic" and that he had tried listening to music to calm down, but the truck kept idling. Asked if he had any "mental or physical manifestations" related to the truck idling, he responded, "We never had any physical." As a result of that incident, defendant was charged with second-degree trespassing for entering Gregg and Davidson's property, and menacing.

Case No. 17CR02656 is associated with another incident, on January 1, 2017, involving a different neighbor, Wisdom. Defendant testified during the offer of proof that Wisdom had never previously parked his truck at his home. One day around that date, defendant had been complaining about the trucks in his neighborhood to the city and to the state police. Then, according to defendant, the next day, "the City came up with their backhoe *** and plowed out for, with all this snow that we had, plowed out for Mr. Wisdom to park his truck right on our property line." Then, a day

or two later, Wisdom started up his truck at about 6:00 in the morning and left it idling for over an hour. According to defendant, the sheriff's department was called, but no one was available to come out. Defendant's attorney was also called, as well as "the City" and a city councilor.

After the truck had been idling for about an hour, defendant went over to Wisdom's house and knocked on the door. There was no answer. Defendant entered the truck and shut the engine off. Forty minutes later, defendant noticed that the truck was running again. He went to Wisdom's door and knocked, and there was no answer. He again entered the truck and shut the engine off, and this time he took the key. He went back home and called his lawyer and the sheriff and told them what he had done. He also called the city councilor again. Then, within 20 minutes, a sheriff's deputy arrived.

Defendant identified "the noise and the smell" of the diesel as bothering him before he decided to enter Wisdom's vehicle. He was "aggravated" by the noise and smell, in connection with his PTSD. Defendant was charged with second-degree trespassing for entering the truck, and third-degree criminal mischief for taking the key.

"'A choice of evils defense is a defense of justification,' *State v. Oneill*, 256 Or App 537, 539, 303 P3d 944, *rev den*, 354 Or 342 (2013), and the 'trial court has a screening function in determining whether the evidence is sufficient to send the choice of evils question to the jury,' *State v. Marsh*, 186 Or App 612, 615, 64 P3d 1141, *rev den*, 335 Or 655 (2003)." *State v. McPhail*, 273 Or App 42, 48, 359 P3d 325 (2015). To be entitled to a choice-of-evils instruction, a defendant must present sufficient evidence from which a factfinder could find the required elements of the defense, and the proposed instruction must correctly state the law. *Oneill*, 256 Or App at 539-40. We have summarized the choice-of-evils defense statute, ORS 161.200, to require evidence that:

> "(1) a defendant's conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for the defendant to believe that the

threatened injury was greater than the potential injury of his illegal actions."

*State v. Seamons*, 170 Or App 582, 586, 13 P3d 573 (2000). To show that criminal conduct was 'necessary' for purposes of the choice-of-evils defense, the defendant must put forth evidence that would allow the factfinder to find that there was no reasonable alternative but to commit the crime. *State v. Freih*, 270 Or App 555, 557, 348 P3d 324 (2015); *see also State v. Miles*, 197 Or App 86, 93, 104 P3d 604 (2005) ("For a defendant's conduct to be 'necessary' to avoid a threatened injury, he must show that no other course of action was available to him but to 'choose an evil.'").

"That 'reasonable person' component of the test refers to a person of ordinary intelligence and understanding, not a person with the unique history or mental characteristics of any particular defendant." *Oneill*, 256 Or App at 544. In *Oneill*, after reviewing characterizations of the "reasonable person" test in multiple contexts, we concluded, "[i]n other words, at the very least, ORS 161.200 requires that a defendant's perception of a threat be reasonable as gauged by an objective 'reasonable person' standard, rather than a subjective, defendant-specific standard." *Id.* at 545.

Defendant first assigns error to the trial court's ruling that defendant had failed to present sufficient evidence to raise the choice-of-evils defense as to the charges associated with the October 5 incident.[6] Defendant argues that, under a proper analysis, he was entitled to the choice-of-evils instruction on the second-degree trespassing charge

---

[6] Defendant argues, in part, that the trial court improperly "coupled the two offenses—menacing and second-degree criminal trespass—and relied on a finding that defendant threatened the victim, in order to conclude that defendant's evidence supporting the instruction for both counts failed on the third element." Defendant failed to preserve that argument. Both parties and the trial court framed the issue at the pretrial hearing as whether the choice-of-evils defense and instruction were available as to each of the two incidents. Defendant never argued the counts separately and did not raise the issue to the trial court during its oral analysis. Likewise, when defendant raised his objection at the close of the evidence to the trial court not giving the requested instruction, he did not make separate arguments as to the two counts, but rather objected to the instruction not being given for the October 5 incident.

Because defendant ultimately was acquitted on the menacing count, the only question of any consequence is whether the trial court erred in its rulings as to the trespassing count, Count 2.

from that incident. The state argues in response that the trial court properly analyzed the defense, and that, as to the trespassing charge, defendant failed to adduce sufficient evidence that his criminal conduct was necessary. We agree with the state.

Part of showing that a defendant's conduct was "necessary as an emergency measure to avoid an imminent public or private injury," ORS 161.200(1)(a), is that the conduct bears some logical relationship to the harm sought to be prevented and could prevent or abate that harm. Here, defendant's testimony in his offer-of-proof was that animosity characterized the relationship between himself and Gregg and Davidson. He had already tried to get them to stop idling the truck on their property many times, and he had shown them before the October 5 incident the statutes that he had concluded they were violating. In response, Gregg had cursed at him and told him that he would be defendant's nightmare neighbor. At the time that he trespassed on October 5, defendant thought that it was his fifteenth such request. We recognize that defendant's prior attempts to confront his neighbors were not successful in getting them to stop idling their truck. Nevertheless, there was no evidence that defendant's trespassing conduct was necessary to enable defendant to request again that they stop the harm of the truck's idling. Defendant could have asked his neighbors to turn off their truck, as he had previously, without trespassing, and there is no basis to believe that the trespassing aspect of his conduct was necessary to achieve the intended result.

In addition, the state argues, defendant could have complied with the request to leave the property, while making his own request that the truck be turned off, when Gregg told him to leave. Instead, he said "I will" but then continued to urge Gregg to turn the truck off and obey the law, without leaving the property.

In *State v. Ko*, the defendant assigned error to the trial court's refusal to give a choice-of-evils instruction on two counts of violating a stalking protective order. 245 Or App 403, 407-09, 263 P3d 1082, *adh'd to as modified on recons*, 246 Or App 410, 264 P3d 1293, *rev den*, 351 Or

507 (2011). In that case, the defendant had come into the presence of two victims who had stalking protective orders against him, and he stopped and spoke with them. At the time that the defendant encountered them, the victims were sitting outside a courtroom in which defendant was required to appear. At trial on the charges of violating the stalking protective orders, the defendant requested that the jury be given a choice-of-evils instruction on the basis that it had been necessary for the defendant to come into the presence of the two victims in order to avoid committing felony failure to appear in court. The trial court refused on the basis that the "defendant had gone beyond the scope of conduct necessary to appear in court." We affirmed that ruling, explaining that the

> "defendant exceeded the scope of the conduct necessary to avoid a failure to appear charge when he stopped to engage the victims. His conduct thus was not necessary to avoid the evil of failure to appear, and the trial court's refusal to give a choice of evils instruction was not error."

*Id*. at 409. Here, by his own account, defendant also exceeded the scope of the conduct that he asserts was necessary— trespassing—by remaining on the property rather than leaving while saying what he considered to be necessary. The trial court did not err in concluding that defendant had failed to present sufficient evidence of the choice-of-evils defense as to the October 5 charges.

Defendant next assigns error to a related ruling in which the trial court determined that, for purposes of the October 5 charges, the jury could not consider evidence about the statutory limitations on truck idling, because that evidence was relevant only to the choice-of-evils defense. Defendant does not argue that the evidence would have been relevant for any other purpose. Having affirmed the trial court's ruling on the choice-of-evils defense, we affirm on the second assignment of error as well.

Finally, defendant's third assignment of error challenges the trial court's pretrial ruling excluding evidence that he suffered from PTSD related to an accident at sea, the circumstances of which caused him to have a particular sensitivity to diesel fumes. Below, defendant sought a ruling

on the admissibility of that evidence as relevant to the imminence and gravity of the harm that the idling trucks caused him.[7] The state argues that defendant's subjective psychological harm is not relevant to the choice-of-evils defense. We conclude that the trial court did not err in excluding the evidence.

During the pretrial offer of proof, defendant testified about how the diesel fumes and the sound of the trucks idling affected him, including testimony about how the smell and noise interacted with his PTSD. The trial court ruled that defendant could, in his defense to the January 1 charges, present evidence at trial about being bothered by the noise and fumes as evidence of the harm caused by the idling truck near defendant's house. The trial court excluded, however, any evidence about defendant's PTSD. The trial court concluded that that evidence was not relevant because the harm of the fumes and noise was to be judged from the objective perspective of a reasonable person, not from defendant's subjective perspective, with his own unique history and mental characteristics. Further, the trial court ruled that, even if the PTSD evidence had some relevance, it would not be admitted under OEC 403 because its relevance would be outweighed by the dangers of confusion and undue delay.

Defendant explained his PTSD at the pretrial offer of proof. The following is a brief summary of that testimony. In 1986, defendant was captaining a ship from Belize to Panama for the Panamanian government. The ship sank 95 miles off the coast of Belize in the middle of the night. A man had been trapped inside the boat when it sank, and he died. Defendant, as captain, felt responsible for that death. Defendant and other crew members had to cling to a

---

[7] Defendant also argues that evidence of his PTSD was relevant to his mental state on the criminal mischief charge from the January 1 incident. Specifically, he argues that the evidence would have supported his theory that he took the keys from Wisdom's truck only in order to stop the idling and not with the intention of causing Wisdom substantial inconvenience. *See* ORS 164.345(1) ("A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another."). As the state points out, defendant did not preserve that argument below, and, for that reason, we reject it without further discussion.

55-gallon drum of diesel fuel for 31 hours. They were harassed by sharks. They had to cover themselves in diesel fuel to try to keep the sharks away. They washed up on a reef 45 miles off the coast of Belize. Defendant is taken back to that incident when he smells diesel fuel or fumes and when he hears "a certain harmonic noise."[8] He said, "It pretty much paralyzes me for the day." He is "aggravated," "confused," "out of [his] normal routine," and "in a panic more or less" on those occasions. If it "keeps aggravating" him, he has to isolate himself. It does not make him physically ill, but he is "not mentally right" when it occurs.

        The trial court ruled that the PTSD evidence was not relevant, and not admissible under OEC 403:

> "I am not allowing in any evidence that either Mr. Dart or Miss Hill suffers from PTSD. That is the holding of the [*Oneill*] case.

> "And so what Mr. Dart testified to was the diesel, the truck idling for long periods of time triggered his PTSD, caused him to be paralyzed and not be able to function. None of that is going to come in.

> "He did testify that the noise and the fumes bothered him. That is evidence in the record that I can point to that a reasonable person would likely object to for an extended period of time. And, indeed, the Oregon Legislature found there was a problem or they wouldn't have passed this law. And so I will allow his testimony and Miss Hill's testimony that the noise and the fumes bothered them.

> "There will be no testimony about PTSD from either one of them. It's not relevant and it's not allowed by the [*Oneill*] case.

> "* * * * *

> "Like I said, there will be no testimony about PTSD. Based on the [*Oneill*] case, it's the reasonable person standard. And even if it was—even if it had some relevance, I would not allow it in under the Rule 403 balancing. * * *

> "It was a long convoluted story told by Mr. Dart and we don't have that kind of time and it's not relevant. If it was relevant, it's outweighed by the danger of confusion and being time consuming."

---

[8] Defendant did not explain the connection between the incident and hearing harmonic noise.

The trial court correctly concluded that the evidence of defendant's subjective psychological harm was not relevant to the choice-of-evils defense. We have previously reserved a question of whether a purely psychological harm can be sufficient to support a choice-of-evils defense. *State v. Freih*, 270 Or App 555, 559, 348 P3d 324 (2015) ("We assume without deciding that a threatened psychological harm to a defendant or a third party could, in some circumstances, qualify as a 'private injury' within the meaning of ORS 161.200(1)(a) that would support the giving of an instruction on the choice-of-evils defense if the other criteria for the defense are met."). In that case, the purely psychological harm under discussion was the harm that would arise from not being able to take care of one's dying mother. That is a harm that an ordinary, reasonable person would experience or could evaluate—it does not depend on particularized individual experiences or mental conditions. In this case, the trial court allowed evidence of the effects on defendant and his housemate of the noise and diesel fumes from the trucks. What it excluded was the exceptional harm about which defendant sought to testify—how the diesel fumes and "harmonic noise" interacted with his PTSD condition to cause him psychological harm. That harm is not the harm that an ordinary, reasonable person without defendant's particular experiences and mental conditions would experience.

We have not previously addressed that precise question, but we addressed a similar question in *Oneill*, 256 Or App at 545-46. In that case, we considered whether the defendant, who perceived a threat due to her PTSD when no threat actually existed, had presented sufficient evidence of the elements of a choice-of-evils defense. The parties framed the dispute as whether the defendant could satisfy the threat of harm element based on the defendant's "reasonable belief" under all of the circumstances that the threat existed. We decided the case based on the state's alternative argument that, even if the threat element could be based on a reasonable belief, there was an objective component to that test. "That 'reasonable person' component of the test refers to a person of ordinary intelligence and understanding, not a person with the unique history or mental characteristics of any particular defendant." *Id.* at 544. After reviewing

characterizations of the "reasonable person" test in mul-
tiple contexts, we concluded, "[i]n other words, at the very
least, ORS 161.200 requires that a defendant's perception
of a threat be reasonable as gauged by an objective 'reason-
able person' standard, rather than a subjective, defendant-
specific standard." *Id*. at 545. Although that statement was
made in the context of the defendant's perception of whether
a threat of harm existed at all, we do not see a meaning-
ful distinction to be made when, as in this case, the issue
is not the existence of the threat of harm, but, rather, the
magnitude of the harm. The harm is to be judged by an
objective reasonable-person standard, not by a "subjective,
defendant-specific standard." That includes the magnitude
of the harm. The trial court correctly excluded the PTSD
evidence as irrelevant.

Defendant's argument as to the trial court's OEC
403 decision is premised on the evidence having some pro-
bative value. In light of our conclusion that the trial court
correctly excluded the evidence as irrelevant, we need not
further address defendant's OEC 403 argument. The trial
court did not err in excluding the PTSD evidence.

Affirmed.