Argued and submitted December 3, 2021, reversed and remanded
January 26, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DUSTEN WADE PHILLIPS,
*Defendant-Appellant.*

Lane County Circuit Court
18CR75015, 19CR40162;
A172538 (Control), A172782

503 P3d 1282

A jury found defendant guilty of first-degree animal abuse. A dog had charged defendant and defendant shot it once in self-defense, and then a second time, according to defendant, to relieve the dog's suffering from the first shot. The animal abuse charge was based on the second shot only; the state did not dispute that the first shot was justified by self-defense. Defendant properly raised the statutory choice-of-evils defense, ORS 161.200, but the trial court did not allow defendant to present the defense and did not instruct the jury on it. On appeal, defendant contends, among other things, that the trial court erred when it prevented defendant's choice-of-evils defense from going to the jury. *Held*: The record in this case would allow for a jury to infer that the elements of the choice-of-evils defense were present. The trial court erred when it ruled that defendant could not present the defense to the jury through argument and, correlatively, when it declined to instruct the jury on the defense. That error was not harmless.

Reversed and remanded.

Kamala H. Shugar, Judge. (Judgment entered October 4, 2019) (A172538)

Maurice K. Merten, Judge. (Judgment entered September 18, 2019) (A172782)

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, Lagesen, Chief Judge, and Kistler, Senior Judge.

LAGESEN, C. J.

Reversed and remanded.

**LAGESEN, C. J.**

A jury found defendant guilty of first-degree animal abuse under ORS 167.320(1)(a) for shooting a dog. The dog had charged defendant and defendant shot it once in self-defense, and then a second time because, according to defendant, the dog was suffering great pain from the first shot. The animal abuse charge was based on the second shot only; the state did not dispute that the first shot was justified by defendant's need to defend himself from the dog's attack. Defendant properly raised the statutory choice-of-evils defense, ORS 161.200, through pretrial notice, as allowed by ORS 161.055(3). He asserted that the second shot was needed to euthanize the dog because the dog was in great pain from the first shot, and because there were no nearby veterinary clinics. Those facts were sufficient, in his view, to require the trial court to let the jury consider his choice-of-evils defense. The trial court did not allow defendant to present the defense and declined defendant's request to instruct the jury on it.

On appeal, defendant contends, among other things, that the trial court erred when it concluded that defendant was not entitled to present a choice-of-evils defense and did not instruct the jury on that defense. We agree with defendant that the trial court erred when it ruled that defendant could not present the defense to the jury through argument and, correlatively, declined to instruct the jury on the defense. We conclude further that the error was not harmless. We therefore reverse and remand.

A defendant is entitled to have the jury instructed on a properly-raised defense if, when the record is viewed in the light most favorable to defendant, there is any evidence to support the presence of each element of the defense. *State v. Moreno*, 287 Or App 205, 209, 402 P3d 767 (2017). Said another way, "A defense to a criminal charge, such as choice of evils, should be withdrawn from the jury's consideration only if there is no evidence in the record to support an element of the defense." *Id.* (internal quotation marks omitted). Although a defense such as the choice-of-evils defense is one that, when properly raised, the state must negate beyond a reasonable doubt, ORS 161.055(1), "[a] choice of evils defense

is a defense of justification, and the trial court has a screening function in determining whether the evidence is sufficient to send the choice of evils question to the jury." *State v. McPhail*, 273 Or App 42, 48-49, 359 P3d 325 (2015), *rev den*, 358 Or 529 (2016) (internal citation and quotation marks omitted).

We review "to determine whether defendant presented any evidence to support the defense[] he sought to assert and evaluate that evidence in the light most favorable to defendant." *State v. Miles*, 197 Or App 86, 88, 104 P3d 604, *rev den*, 338 Or 488 (2005).

In this case, defendant raised the choice-of-evils defense by giving pretrial notice, as allowed by ORS 161.055(3), which states,

> "The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

The state then moved *in limine* to preclude defendant from raising the defense. Following a hearing on the state's motion, the court ruled, "I am not going to allow any reference to the choice of evils defense in opening statement, in jury selection or throughout the trial." The court instructed defendant that should a "renewed basis" for the defense arise, it may reconsider allowing the defense and permitted defendant to testify about "why he shot the dog the second time," so long as the choice-of-evils defense was not mentioned. At the close of evidence, defendant again requested that the jury be instructed on the choice-of-evils defense, but the court, after considering the matter overnight, did not deliver the instruction. Because the record reflects that the trial court considered whether to withdraw the defense from the jury pretrial and then reconsidered that decision at the end of trial, we review the court's decision against the entire record, although we note that the evidence at trial did not depart in any significant way from how the evidence developed pretrial.

When the evidence is viewed in the light most favorable to defendant, it reveals the following. Defendant entered a house where several people were present. One

of them owned a dog and, at first, restrained the dog by blocking it in a bedroom. Then, the dog's owner "smiled and stepped aside and the dog come ripping out of the bedroom around the corner of the couch by the fireplace with its teeth baring, and it was obvious it was going to attack." As the dog charged toward him, defendant pulled out his gun and shot the dog. The dog "made a loud yelp and walked back like two steps to the stove and was screaming in pain[.]" Defendant then stated out loud that "[he] would put the dog out of its misery," and, although the owner was there, "[n]obody told [him] not to." When defendant aimed for the second shot, the dog "was laying down, screaming, horribly in pain." He shot the dog a second time and immediately left the house. With regard to the second shot, defendant did not think he had other options because of the dog's wounded condition, and because there were no nearby veterinary clinics:

> "I could have left and left that dog screaming in pain and I would have felt that that would have been horrible. That would have been abuse to the animal, I thought, because it, you know what I mean, it was mortally wounded.

> "It was, you know, and it was screaming in horrible pain. I didn't think I had another option.

> "* * * * *

> "And when I said that I would put it out of its misery, and nobody said not to, I, you know. I [thought] that's what, you know, I should do. I don't think anything suffering is any good."

Defendant explained that he had "grown up on a farm," and had "seen animals that were injured bad," and thought that "the dog was injured bad." He explained further that the nearest veterinary clinic was in Springfield and estimated that it would take about 45 minutes to an hour to get there. Defendant also testified that he did not think the dog would survive the trip to the vet and that "it would have been inhumane to let it suffer to try to get to the vet to put it to sleep for it not to make it."

Defendant asserts that, on these facts, the trial court erred when it did not allow him to raise the choice-of-evils defense allowed by ORS 161.200. The state responds

that the trial court correctly declined to let defendant raise the defense.

ORS 161.200 sets out the elements of the choice-of-evils defense. It states, in relevant part:

> "(1)   Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

> "(a)   That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

> "(b)   The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

ORS 161.200. When a defendant has properly raised the defense in the manner specified in ORS 161.055(3), a trial court must instruct the jury on the choice-of-evils defense under ORS 161.200, unless the record is devoid of evidence that would allow the jury to find three things:

> "(1) his conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for him to believe that the need to avoid that injury was greater than the need to avoid the injury that *** the statute that he was found to have violated *** seeks to prevent."

*State v. Heaton*, 310 Or App 42, 46, 483 P3d 1209, *rev den*, 368 Or 637 (2021) (citation omitted).[1] Here, defendant asserts

---

[1] Although we long have said that a defendant's evidence must be such that a jury could find in the defendant's favor on the choice-of-evils defense, *see, e.g.*, *State v. Boldt*, 116 Or App 480, 483, 841 P2d 1196 (1992), and have characterized it as an affirmative defense, *State v. Oneill*, 256 Or App 537, 543-44, 303 P3d 944, *rev den*, 354 Or 342 (2013), that description risks miscommunicating the nature of defendant's evidentiary burden as established by the legislature. The governing statutes place the burden of *disproving* the defense on the state. The choice-of-evils defense defined by ORS 161.200 is not an affirmative defense, because chapter 743, Or Laws 1971, did not "declare[]" it to be an affirmative defense. ORS 161.055(2). As a result, "the state has the burden of disproving the defense beyond a reasonable doubt" whenever a defendant raises the defense by either pretrial notice or by presenting the evidence in the defendant's case in chief. ORS 161.055(1), (3).

that his conduct was necessary to avoid prolonging the dog's suffering from the injury caused by the first shot. Therefore, unless inconsistent with other provisions of law, defendant was entitled to an instruction on the defense if the evidence would allow the jury to find (1) that shooting the dog a second time was necessary to avoid the dog's prolonged suffering; (2) that the dog's prolonged suffering was imminent; and (3) that it was reasonable for him to believe that the need to avoid the dog's prolonged suffering was greater than the need to avoid causing the additional serious physical injury to the animal—in this case, the death of the animal.

There is no provision of law that precludes the availability of a choice-of-law defense in these circumstances. *See State v. Clowes*, 310 Or 686, 697-98, 801 P2d 789 (1990) (explaining that the statutory text, "inconsistent with some other provision," means that "specific value choices" made by the legislature via statutory law prevail over an otherwise available justification defense).[2]

As for whether the evidence would allow an inference that the dog's prolonged suffering was imminent, defendant's testimony would allow a factfinder to find the dog had been shot once, was "screaming" in pain, and that a trip to the vet to euthanize the animal would immediately result in that prolonged pain. *See McPhail*, 273 Or App at 50 (imminence requires that threat of injury existed at the time that defendant committed his offense).

The next question is whether the evidence would allow for the inference that defendant's act of shooting the dog a second time was necessary to avoid the dog's imminent prolonged suffering. "To show that criminal conduct was necessary within the meaning of ORS 161.200(1)(a), defendant is required to put forth evidence that would allow the jury to find that he had no reasonable alternative but to commit the crime. In other words, the evidence must allow for the inference that the defendant had no other course of

---

[2] On the contrary, as defendant points out, the legislative history of ORS 167.320 indicates that the legislature was told that the law would "[a]llow[] for [a] defense of ending an animal's life to alleviate its suffering," *i.e.*, the choice-of-evils defense. Testimony, Senate Committee on Judiciary, SB 230, Feb 15, 2001, Ex O (statement of Stephen Otto).

action than committing the crime charged in order to avoid a threatened injury." *Heaton*, 310 Or App at 46-47 (internal citations and quotation marks omitted).

Defendant's evidence allows for that inference here. According to defendant's testimony during his offer of proof, the dog was screaming, lying on its side, and, based on defendant's experience growing up on a farm, which gave him firsthand experience with badly injured animals, was "mortally wounded." Defendant saw "no choice" but to shoot the animal to alleviate its suffering. Defendant voiced his intention to put the dog out of its misery, and neither the dog's owner nor anyone else present responded by suggesting a different course of action. Moreover, there was no nearby veterinary assistance, with the closest veterinarian being 45 minutes to an hour away, so there was no apparent alternative way to euthanize the animal.

That evidence would allow a reasonable jury to find that defendant had no reasonable alternatives to shooting the dog a second time to prevent its prolonged suffering. Although the evidence would not *compel* the finding—a reasonable jury certainly could view the situation differently—it would *allow* the finding. Said another way, on this record, reasonable jurors could differ as to whether defendant had no other reasonable alternatives, which means that defendant created a jury question on the defense.

In concluding to the contrary, the trial court reasoned that defendant had alternatives to shooting the dog a second time: simply leaving after shooting it the first time in what the state does not dispute was self-defense, driving 45 minutes to an hour to seek out veterinary care (or leave that option open to the owner) despite what appeared to be a mortal wound, or "hand[ing] his gun to the owner and let[ting] the owner make" the decision to "put[] the dog out of [its] misery." Although those all might have been alternatives, on these facts, a reasonable jury could reject the notion that they were *reasonable* alternatives to the course of action that defendant did take. Simply put, a reasonable jury, viewing the evidence in the light most favorable to defendant, could infer that the dog was mortally wounded, making it unreasonable for defendant to simply walk away.

A reasonable jury also could infer that handing the gun to the owner was not a reasonable option because the evidence would allow an inference that the owner assented to defendant's proposal to put the dog out of its misery, and there is no basis in this record to infer that the owner desired to shoot the dog himself, rather than have defendant do it. A reasonable jury could also find that driving to a veterinary clinic was not a reasonable option because it would prolong the dog's suffering until it could be euthanized by a veterinarian. Again, a jury would not *have* to make those findings—it could easily view facts differently—but it would not be unreasonable for the jury to see the evidence as demonstrating that defendant lacked reasonable alternatives to shooting the dog a second time to put it out of its misery.

Finally, the evidence also had to be such that it would allow for the inference that "it was reasonable for [defendant] to believe that the need to avoid" the dog's prolonged suffering was "greater than the need to avoid" causing the additional serious physical injury to the animal. The standard is of an objectively reasonable person "of ordinary intelligence and understanding, not a person with the unique history or mental characteristics of any particular defendant." *State v. Oneill*, 256 Or App 537, 544, 303 P3d 944, *rev den*, 354 Or 342 (2013).

Here, the facts would allow for that inference. When viewed in defendant's favor, the dog was already seriously injured by defendant's first shooting which, again, the state has not disputed was justified in self-defense. The second shot, on which the state based the prosecution, was intended to alleviate the suffering caused by the serious physical injury inflicted by the justified initial shooting. The statute under which defendant was charged, which prohibits the knowing or reckless infliction of serious physical injury on an animal, ORS 167.320, "reflect[s] a legislative concern that animals be protected from unnecessary pain, trauma, and suffering[.]" *State v. Fessenden*, 258 Or App 639, 648, 310 P3d 1163 (2013), *aff'd*, 355 Or 759, 333 P3d 278 (2014). In a sense, then, defendant's choice to attempt to alleviate the dog's suffering was in the spirit of the statute under which

he is charged, or so a jury could infer. In other words, a jury could infer that it is reasonable to euthanize a suffering animal—necessarily injuring it further by causing its death—to eliminate the animal's suffering from a preexisting serious injury.

In short, the record in this case would allow for a jury to infer that the elements of the choice-of-evils defense were present. Defendant was entitled to a jury instruction on the defense.

Opposing this conclusion, the state makes three main arguments. First, the state contends that the assigned error is not preserved with respect to defendant's challenge to the court's failure to deliver the instruction. We disagree. Defendant properly raised the defense by pretrial notice and presented evidence sufficient to allow the defense to go to the jury, but the trial court erroneously ruled that he had not done so. Defendant also requested the instruction again at the end of trial and submitted a written request for the instruction. The trial court considered the issue overnight but did not give the instruction. That is sufficient to preserve a contention that the trial court erred by not instructing the jury on the defense.

Second, the state argues that, in this instance, permitting the choice-of-evils defense would be contrary to another provision of law. The state concedes that there may be circumstances when intentionally causing an animal's death is necessary to prevent unnecessary suffering but argues that, based on "competing values which have been foreclosed by deliberate legislative choice," only an animal's owner can usually make that decision. *See Clowes*, 310 Or at 698. That, the state contends, is because animals are generally considered property and thus relevant statutes give pet owners "final authority" over the euthanasia of their animals. For example, the state points to ORS 686.440, which provides civil immunity for a veterinarian who decides to euthanize "a seriously injured or seriously ill animal," but only if the veterinarian "does not know who owns the animal or is unable to contact an owner of the animal before a decision must be made with respect to emergency treatment or euthanasia." While the state is correct that established

law generally protects an animal owner's right to have a say in the euthanasia of an animal, that law does not persuade us that the legislature intended to categorically prohibit a defendant from raising a choice-of-evils defense on facts like those present here. Significantly, the record here would allow for the inference that the owner tacitly consented to defendant's conduct, such that the owner had the opportunity to have a say in whether his injured dog should be euthanized at the time and in the manner proposed by defendant.[3]

Third, the state contends that the evidence is insufficient to support a finding of necessity because of the owner's presence. But, for reasons discussed above, on these facts, the owner's presence, on its own, does not compel an inference that defendant had other reasonable courses of action available, as the state necessarily would be required to prove to negate the choice-of-evils defense.

*Harmless Error.* Even though defendant was precluded from explicitly raising a choice-of-evils defense before the jury, related evidence was permitted. However, it cannot be concluded that the evidence would not have been presented differently had defendant been allowed to formally raise the choice-of-evils defense, nor can it be concluded that the jury would have weighed the evidence the same. Insofar as the court erred by preventing defendant from raising the choice-of-evils defense, that error was not harmless.

The facts of this case, viewed in the light most favorable to defendant, could allow a jury to find that defendant reasonably believed that shooting the dog a second time was necessary to alleviate the dog's suffering and that it was reasonable for him to believe that the need to avoid the dog's prolonged suffering was greater than the need to avoid causing serious physical injury to the animal. Because of that,

---

[3] The state did not call the owner of the dog at trial to contradict defendant's testimony that he had announced his intention to put the dog out of its misery before he shot it the second time, and that no one had said anything in response. The only evidence offered by the state to contradict defendant's testimony was testimony from the deputy sheriff who investigated the incident. Although the deputy sheriff testified that she did not hear from defendant that he announced his intentions, that testimony, on its own and viewed in a light most favorable to defendant, is not sufficient to preclude the possibility of a reasonable jury finding that the owner tacitly consented to defendant's proposed course of action.

the trial court erred when it withdrew the choice-of-evils defense from the jury. That is, on this set of facts, reasonable jurors could have a range of reasonable perspectives on whether the defendant's conduct was justified by the choice-of-evils defense. Some reasonable jurors could conclude that it was; others could conclude that it was not. That determination, though, is one that defendant, having exercised his right to have a jury decide his case, is entitled to have resolved by the jury on this record. We therefore reverse his conviction on that basis and remand for a new trial.

That leaves a few other matters to wrap up. Our conclusion that the court erred in failing to instruct the jury on the choice-of-evils defense obviates the need to address defendant's third assignment of error, in which defendant contends that the trial court erred by not instructing the jury or otherwise communicating to it that the state's prosecution was based on defendant's second shot only, and not the first shot. In another assignment of error, defendant contends that the evidence is insufficient to support his conviction and that the trial court, therefore, erred in denying his motion for judgment of acquittal. Having reviewed the record, we reject that contention.

Reversed and remanded.