Argued and submitted February 24, reversed and remanded May 17, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAMION MICHAEL CLOWDUS,
*Defendant-Appellant.*

Washington County Circuit Court
21CR11551; A177572

530 P3d 525

Defendant was convicted of driving while suspended, ORS 811.182(4), after he drove his car approximately 200 feet from where his girlfriend had left it in the middle of the road. On appeal, defendant argues that, because there was evidence to support each element of the defenses of necessity, ORS 811.180(1)(a), and choice of evils, ORS 161.200, the trial court erred in refusing to instruct the jury on those defenses as he had requested. *Held*: The trial court erred in refusing to give the instructions. When a criminal defendant requests a jury instruction on a defense, the court must give the instruction if it states the law correctly and there is evidence to support each element of the defense. Here, regardless of whether a jury would ultimately have found in defendant's favor on the defenses, the evidence was legally sufficient to go to the jury as to both necessity and choice of evils.

Reversed and remanded.

Janelle F. Wipper, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Robert W. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Defendant was convicted of driving while suspended, ORS 811.182(4), after he drove a car approximately 200 feet from where his girlfriend had left it in the middle of the road. On appeal, defendant assigns error to the trial court's refusal to instruct the jury on the defenses of necessity, ORS 811.180(1)(a), and choice of evils, ORS 161.200. We agree with defendant that the court erred in failing to give those instructions and, accordingly, reverse and remand.

When a criminal defendant requests a jury instruction on a defense, the court must give the instruction if it states the law correctly and there is evidence to support each element of the defense. *State v. Cruz-Gonzalez*, 256 Or App 811, 813, 303 P3d 983, *rev den*, 354 Or 61 (2013). We review the refusal to give a jury instruction for legal error, stating the facts in the light most favorable to the party who requested it. *State v. Oneill*, 256 Or App 537, 538, 303 P3d 944, *rev den*, 354 Or 342 (2013). We therefore describe the facts in the light most favorable to defendant.

On a February night just before 11:00 p.m., defendant was a passenger in a car driven by his girlfriend, B. Defendant and B started arguing, including about the fact that defendant had bought the car for B as a gift, which B felt defendant was holding over her head. B became so upset that she stopped the car in the middle of Baseline Road in Hillsboro, told defendant to "take the car then," exited the car, and "stormed off" on foot. B left the car "in the middle of the road." Baseline Road is a "main thoroughfare" and one of two "very main arterial roadways" in the area. It has four car lanes, two bike lanes (one on each side), and no shoulder. The road is "heavily trafficked," and sometimes there are "vehicles that drive fast," although traffic was less busy at 11:00 p.m.[1]

---

[1] There was no direct evidence as to how busy the road was specifically at the time of the incident. The police officer who testified did not remember what the traffic was like, and the gas station attendant was asked how busy the road was but answered how busy the gas station was. The parties seem to agree, however, that it could at least be inferred that the road was less busy at 11:00 p.m. than other times of day.

After B left, defendant, who has a suspended driver's license, drove B's car approximately 200 feet and parked it at a gas station. The gas station attendant soon approached the car and was unable to rouse defendant, who had fallen asleep, so he called the police. When the police arrived for a welfare check, defendant initially denied driving the car but then admitted to having driven it a short distance as described above. Defendant called B in front of the police, and B walked back and met them at the gas station, where she talked to the police. B later testified that she and defendant had been arguing, that she stopped the car in the middle of the road and walked away, and that they were "almost to the gas station" when she stopped.

Defendant was charged with driving while suspended. He filed a pretrial notice of intent to rely on the necessity defense and, at trial, asked the court to instruct the jury on both necessity and choice of evils. Necessity is an affirmative defense that applies specifically to the offense of driving while suspended. ORS 811.180(1)(a). Choice of evils is a justification defense that also applies to driving while suspended. ORS 161.200 (choice of evils); ORS 811.180(1)(a) (referring to ORS 161.200 as another "defense[] provided by law" for driving while suspended). The state objected to defendant's requested instructions, arguing that there was no evidence that anyone was injured or that there was an immediate or imminent threat of injury to anyone, as well as that alternatives existed to defendant driving the car. The trial court agreed with the state and did not instruct the jury on either the necessity defense or the choice-of-evils defense. On appeal, defendant challenges the refusal to give those two instructions.

As to each defense, it is undisputed that the requested instruction was legally correct, but it is disputed whether there was any evidence to support the defense. For purposes of that determination, the "quantum" of evidence is irrelevant, *State v. Brown*, 306 Or 599, 603 n 3, 761 P2d 1300 (1988), as is the existence of contrary evidence, *State v. Costanzo*, 94 Or App 516, 518 n 1, 766 P2d 415 (1988). "[T]he court's role is not to weigh the evidence, but merely to determine if any evidence would support the defense." *Costanzo*, 94 Or App at 518 n 1. That is both because it is the jury's job

as factfinder to weigh the evidence, including deciding credibility and resolving conflicts in the evidence, and because the Supreme Court has interpreted Article VII (Amended), section 3, of the Oregon Constitution as requiring that a theory "must be submitted for the jury's consideration, no matter whether the judge is persuaded[,]" if there is any evidence to support all of the elements of the theory. *Brown*, 306 Or at 604.

For purposes of determining whether any evidence supports a defense, it is important to keep in mind that jurors are permitted to make "reasonable inferences" from evidence but are not allowed to engage in "speculation and guesswork." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Jurors also may rely on common experience or common knowledge in making reasonable inferences. *Id*. at 469 (a factfinder could reasonably infer, based on common experience, that an open-handed slap makes a distinctive sound); *see also Dodge v. Tradewell Stores*, 256 Or 514, 515-16, 474 P2d 745 (1970) (a jury could reasonably infer, based on common knowledge, that vinyl or asbestos flooring is slippery when wet); *Skeeters v. Skeeters*, 237 Or 204, 214, 389 P2d 313, *reh'g den*, 237 Or 242, 391 P2d 386 (1964) (although a jury cannot be permitted to speculate, it may rely on common experience to draw inferences).

Ultimately, "[if] there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts." *Bivins*, 191 Or App at 467 (internal quotation marks omitted); *see also State v. Hedgpeth*, 365 Or 724, 733, 452 P3d 948 (2019) ("[R]eferences to 'logic' do not mean that a reasonable inference must follow 'necessarily' or in the form of a 'logical syllogism.' 'Logic' includes 'principles of deduction or inference.' *Webster's Third New Int'l Dictionary* 1330 (unabridged ed 2002). And it has long been settled law in Oregon that a party may rely on reasonable inferences arising from circumstantial evidence to establish elements of a criminal offense."). Conversely, if the conclusion that needs to be drawn from the evidence to prove an element requires "too great an inferential leap" or "the stacking of inferences

to the point of speculation," then the evidence is insufficient. *Bivins*, 191 Or App at 468 (internal quotation marks omitted). Whether an inference is reasonable on a particular record is a question of law. *Id.* at 467. Also, if more than one reasonable inference may be drawn from the evidence, it is for the jury to decide between them. *Hedgpeth*, 365 Or at 732.

With those principles in mind, we conclude that the trial court erred in refusing to instruct the jury on the affirmative defense of necessity. ORS 811.180(1)(a) establishes an affirmative defense to the offense of driving while suspended when there was "[a]n injury or immediate threat of injury to a human being or animal, and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question." Breaking that into elements, the two elements of the necessity defense are (1) an injury or immediate threat of injury to a human or animal, and (2) circumstances that were urgent enough to make it necessary for the defendant to drive at the time and place that he did. *State v. Haley*, 64 Or App 209, 212-13, 667 P2d 560 (1983). The defendant is not required to prove that a threat of injury actually existed, only that he reasonably believed that it did and that the information available to him would cause a reasonable person to believe the same. *Brown*, 306 Or at 605-06 ("The word 'threat' implies something that has not yet actually happened and requires a driver who attempts to rescue someone from a 'threat of injury' to make a judgment about the existence of that threat.").

Regarding the first element of necessity, the jury could have found on this record that defendant believed that leaving B's car where it was posed an immediate threat of injury to other people on the road. Although defendant did not testify, a person's subjective belief may be reasonably inferred in appropriate circumstances. *See Costanzo*, 94 Or App at 520 (the defendant's friend's testimony regarding the circumstances of the defendant's driving was sufficient evidence to put the necessity defense to the jury, including allowing an inference "that defendant reasonably believed that [his friend]'s medical situation threatened imminent injury"); *State v. Sweet*, 93 Or App 642, 645-46, 763 P2d 739 (1988) (the defendant's wife's testimony regarding an

emergency driving situation was sufficient evidence to put the necessity defense to the jury, including as to whether the defendant "actually and reasonably believed" that there was an immediate threat of injury); *see also, e.g., State v. Hamilton*, 285 Or App 315, 326, 397 P3d 61 (2017) (recognizing generally that a police officer's subjective belief may be inferred from other evidence, but concluding that the particular record did not allow a reasonable inference that the officers held a particular subjective belief, where their express statements indicated a different subject belief).

Here, the jury could have found that B stormed off during an argument, leaving her car in the "middle of the road" on a "main thoroughfare" late at night, and that defendant then drove the car a distance of only about 200 feet, parked it, and fell asleep. From that evidence, a jury could reasonably infer that defendant moved the car because he believed that leaving it in the middle of the road posed an immediate threat of injury to people in other vehicles, who would not expect to encounter a stopped vehicle in the middle of the road and could be injured by crashing into it or attempting to swerve around it. The fact that defendant drove the car only about 200 feet is particularly relevant to it being reasonable to infer that he moved the car to avoid someone hitting it, as there is no other apparent reason to drive such a short distance and park. A jury could also find that defendant's belief of an immediate threat of injury was reasonable under the circumstances. Based on common experience, a jury could infer that, on a main thoroughfare in an urban area, the arrival of other vehicles was inevitable and imminent, even at the less trafficked hour of 11:00 p.m.

Regarding the second element of necessity, the jury could find on this record that defendant reasonably believed that the circumstances were urgent enough to make it necessary for him to drive B's car a short distance to get it off the roadway. *See Brown*, 306 Or at 607 ("[W]hether there was such urgency is to be tested by the defendant's reasonable belief, and defendant's reasonable belief must be established by evidence of the same criteria as that concerning the reasonableness of a defendant's belief that there was injury or threat thereof."). The jury could properly consider as relevant to that issue the seriousness of the injury sought

to be avoided—that is, injuries attendant to a motor vehicle crash—and that defendant would not have had time to move the car if he waited until he saw a vehicle approaching in a manner suggestive of an impending crash. *See Sweet*, 93 Or App at 645 ("As to the [second element of the necessity defense in ORS 811.180(1)(a)], both the magnitude of the actual or threatened injury and the time necessary to avert or remedy the injury or threatened injury are circumstances to consider.").

The state's arguments as to why the evidence was insufficient to prove the necessity defense do not persuade us; rather, we view them as arguments better directed to the jury. For example, the state points to the fact that defendant initially denied driving the car at all, but it was for the jury to decide whether that undermined defendant's later statements to the police in a way that would undermine the defense. The state also argues that, even if defendant believed that there was an immediate threat of injury to others and that it was urgent to move the car off the roadway, such belief was unreasonable as a matter of law. *See Brown*, 306 Or at 607 (the reasonableness of the defendant's belief "must be a question for the jury" unless there is no evidence allowing a finding that it was reasonable). The trial court appears to have agreed, pointing to the lack of evidence of a "close call." However, a jury could find that the circumstances were urgent enough to necessitate moving the car immediately, without waiting for a near crash.

Accordingly, the trial court erred in refusing to instruct the jury on the necessity defense. A jury might not have found in defendant's favor in the end, but there was enough evidence that it could have found in his favor, which is dispositive.

We next consider the choice-of-evils defense in ORS 161.200, which is "somewhat similar" to the necessity defense in ORS 811.180(1)(a) but more general in application. *Brown*, 306 Or at 605 n 6 (describing the defenses as "somewhat similar" and referring to choice of evils as the "generalized necessity defense"). Subject to certain exceptions, conduct that would otherwise constitute an offense "is justifiable and not criminal" when it "is necessary as an

emergency measure to avoid an imminent public or private injury" and "[t]he threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue." ORS 161.200(1).

Unlike necessity, which is an affirmative defense on which the defendant bears the burden of proof, choice of evils is a justification defense that, "when properly raised, the state must negate beyond a reasonable doubt." *State v. Phillips*, 317 Or App 169, 171-72, 503 P3d 1282 (2022); *see also* ORS 161.055 (stating the burden of proof for affirmative defenses and for defenses "other than" affirmative defenses). However, "the trial court has a screening function in determining whether the evidence is sufficient to send the choice of evils question to the jury." *Phillips*, 317 Or App at 172 (internal quotation marks omitted).

We have described the choice-of-evils defense as having three elements. *State v. Boldt*, 116 Or App 480, 483, 841 P2d 1196 (1992). First, the conduct must be "necessary" to avoid a threatened injury. *Id*. Conduct is necessary only if the defendant had "no reasonable alternative but to commit the crime." *Phillips*, 317 Or App at 175. Second, the threatened injury must be "imminent," *Boldt*, 116 Or App at 483, which means "immediate, ready to take place, or near at hand," *City of Eugene v. Adams*, 313 Or App 67, 72, 495 P3d 187, *rev den*, 368 Or 787 (2021) (internal quotation marks omitted), as assessed from the perspective of an objective reasonable person, *Oneill*, 256 Or App at 545. Third, it must be reasonable for the defendant to believe that the need to avoid the threatened injury outweighed the injury that the violated statute seeks to prevent. *Boldt*, 116 Or App at 483. Whether "the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue" is judged "according to ordinary standards of intelligence and morality." ORS 161.200(1)(b).

In refusing to give an instruction on the choice-of-evils defense, the trial court focused on the second element,

pointing to a lack of evidence of an "imminent" threat of injury, such as evidence of other crashes on Baseline Road, heavy traffic, or the like. We conclude that the evidence was sufficient to create a jury question on whether there was an "imminent" threat of injury, for essentially the same reasons that it was sufficient to create a jury question on whether there was an "immediate" threat of human injury for purposes of the first element of the necessity defense.[2]

As to the first element of choice of evils, the state argues that it was not necessary for defendant to drive the car 200 feet to the gas station, because there were other alternatives. The state posits that defendant could have instead called B and tried to persuade her to come back and move the car herself, physically pushed the car off the road (by himself at night), left the car where it was and turned on the emergency flashers to warn other drivers, called the police nonemergency line, or walked to the gas station for help. Those are all arguments that the state could have made to the jury, but we are unpersuaded that they preclude finding for defendant as a matter of law. Hypothetical alternatives are relevant only insofar as a jury finds that a *reasonable* alternative existed under the circumstances. *Phillips*, 317 Or App at 176 ("Although those all might have been alternatives, on these facts, a reasonable jury could reject the notion that they were *reasonable* alternatives to the course of action that defendant did take." (Emphasis in original.)). The jury might have been persuaded by the state's arguments. However, "on this record, reasonable jurors could differ as to whether defendant had no other reasonable alternatives, which means that defendant created a jury question on the defense." *Id*.

Finally, as to the third element of choice of evils, a jury could find on this record that defendant reasonably believed that the threatened injury to other drivers and their

_____

[2] Whereas the necessity defense requires "[a]n injury or immediate threat of injury to a human being or animal," ORS 811.180(1)(a), the choice-of-evils defense requires "an imminent public or private injury[,]" ORS 161.200(1)(a), which we have construed to include property damage, *Haley*, 64 Or App at 215. In this case, someone crashing into B's vehicle in the middle of the road would necessarily cause property damage, in addition to risking injury to the humans in the vehicle.

passengers posed by B's car being parked in the middle of Baseline Road late at night outweighed the injury that ORS 811.182 (creating the offense of driving while suspended) seeks to prevent, particularly because defendant drove the car only 200 feet.

Because there was sufficient evidence to create a jury question on the choice-of-evils defense, the court erred in refusing to instruct the jury on that defense.

In sum, the trial court erred by refusing to instruct the jury on the necessity and choice-of-evil defenses. We readily conclude that those errors were not harmless and, accordingly, reverse and remand for a new trial. *Cf. Phillips*, 317 Or App at 180 ("[O]n this set of facts, reasonable jurors could have a range of reasonable perspectives on whether the defendant's conduct was justified by the choice-of-evils defense. Some reasonable jurors could conclude that it was; others could conclude that it was not. That determination, though, is one that defendant, having exercised his right to have a jury decide his case, is entitled to have resolved by the jury on this record.").

Reversed and remanded.