Argued and submitted January 14, affirmed May 6, reconsideration denied June 26,
petition for review denied August 24, 1987 (304 Or 56)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN CARL WEBBER,
*Appellant.*

(209-C-86; CA A40783)

736 P2d 220

Mike Kilpatrick, Mt. Vernon, argued the cause for appellant. With him on the brief were Robert S. Johnson, Certified Law Student, and Kilpatricks & Pope, Mt. Vernon.

Charlene Woods, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals his convictions for taking a game mammal in a closed season and for wasting a game mammal. ORS 496.992; OAR 635-65-750(2); OAR 635-65-760(8).[1] He assigns error to the trial court's refusal to instruct the jury that he had an absolute constitutional right to kill the deer if it was reasonably necessary for the protection of his property and to instruct the jury on the "choice of evils" defense. We affirm.

Defendant produces cattle and hay on his ranch in eastern Oregon. The ranch is near forest land that abounds with game animals, especially deer. There has been a history of deer problems at the ranch. In 1983, defendant complained to the Fish and Wildlife Department about deer feeding at his haystacks. The department supplied him with haystack panels designed to protect the hay from the deer. He installed the panels and tied up dogs at intervals around the stacks. Apparently, defendant had no further problems with deer feeding at the haystacks that year. However, in 1985, when deer began to feed at his hay feeders, defendant did not call the department to complain about the damage or to request assistance. He knew that he could apply for a permit to kill deer, but he did not want to participate in the kill permit program, because he would be required to skin, dress and dispose of the deer. A wildlife biologist for the department testified that a number of options were available had he sought help, including hazing permits and possibly an emergency hunt. On November 28, 1986, during an extended period of snow and cold weather, defendant shot at some deer. He was charged with killing and wasting six of them; he was convicted of killing and wasting one.

Defendant's first five assignments of error concern

---

[1] ORS 496.992(1) provides in part:

"Except as otherwise provided by law, violation of any provision of the wildlife laws, or any rule promulgated pursuant thereto, is a class A misdemeanor when the offense is committed with a culpable mental state as defined in ORS 161.085."

OAR 635-65-750(2) provides that it is unlawful "[t]o waste any game mammal or parts thereof." OAR 635-65-760(8) provides that it is unlawful "[t]o take or attempt to take any game mammals * * * by any method or weapon, during any time or in any area not prescribed in these rules."

the trial court's refusal to give instructions which, in varying language, state that defendant had an absolute constitutional right to kill a game animal if it was reasonably necessary to protect his property. We assume without deciding that defendant has, as he asserts, a constitutional right to protect his property under Article I, sections 1, 10, 18 or 33, of the Oregon Constitution, or the Fifth, Ninth or Fourteenth Amendments to the United States Constitution. *See Annot.,* 93 ALR2d 1366 (1964).[2]

■■ The exercise of constitutional rights may be subject to reasonable regulation.[3] ORS 498.012(1) provides:

> "Nothing in the wildlife laws is intended to prevent any person from taking any wildlife that is damaging land that the person owns or lawfully occupies or is damaging livestock or agricultural or forest crops on such land. However, no person shall take, pursuant to this subsection, at a time or under circumstances when such taking is prohibited by the commission, any game mammal * * * unless the person first obtains a permit for such taking from the commission."

We agree with the trial court that a permit requirement is a reasonable restraint on defendant's right to protect his property. That right therefore is not absolute. His first five

---

[2] The annotation states, in part:

"The rule appears to be well established that the plea of justification is a valid defense to the charge of unlawfully killing a protected wild animal, where it can be shown that killing was reasonably necessary in order to defend property from damage or destruction by the protected animal. In jurisdictions having state constitutional provisions specifically guaranteeing the right of acquiring, possessing, and protecting property, it has been held that the right to kill a protected animal in defense of property exists, under and by virtue of such constitutional provisions securing to all persons the right to own and safeguard property. In other jurisdictions wherein the state constitutions do not specifically guarantee the right of acquiring, possessing, and protecting property, the right to kill protected game, under the appropriate circumstances, has been held to exist by virtue of other constitutional provisions." 93 ALR2d at 1368. (Footnotes omitted.)

[3] Examples of constitutional rights whose exercise is subject to reasonable regulation by the legislature include the state constitutional right to bear arms, *see State v. Delgado,* 298 Or 395, 403, 692 P2d 610 (1984) ("The legislature may, if it chooses to do so, regulate possession and use [of constitutionally protected arms].etc."), the First Amendment's free speech guarantees, *see Van v. Travel Information Council,* 52 Or App 399, 407, 628 P2d 1217 (1981) (political speech afforded maximum protection under First Amendment, but subject to reasonable time, place and manner restrictions), and the state constitutional prohibition against taking private property for public use without just compensation. *See Willard v. City of Eugene,* 25 Or App 491, 495, 550 P2d 457, *rev den* (1976) (ownership of property is subject to reasonable regulation by state).

requested instructions were not correct statements of the law. The trial court did not err in refusing to give them.[4] *See State v. Meek,* 35 Or App 649, 654, 582 P2d 464 (1978).

■ Defendant's seventh and eighth assignments of error arise from the trial court's refusal to instruct the jury on the choice of evils defense. A criminal defendant is entitled to instructions on all issues of law arising from the evidence and to present his theory of defense if that theory is supported by the evidence. *State v. Shaw,* 68 Or App 693, 696, 684 P2d 7 (1984). Whether the evidence entitles a defendant to a jury instruction on a particular defense is governed by the statutory requirements for establishing the defense. *State v. Matthews,* 30 Or App 1133, 1135, 569 P2d 662 (1977).

ORS 161.200(1) provides that criminal conduct is justifiable when necessary as an emergency measure to avoid an imminent private injury, if the threatened injury is of such gravity that "the desirablility and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

■ The choice of evils defense is not limited to actions taken to protect life, but may also be invoked by a defendant who has acted unlawfully in order to protect property. *See State v. Olson,* 79 Or App 302, 305, 719 P2d 55 (1986). Defendant was entitled to a choice of evils instruction if there was some evidence from which the jury could find that (1) his conduct was necessary to avoid a threatened injury, (2) the threatened injury was imminent and (3) it was reasonable for defendant to believe that the need to avoid the injury to his property was greater than the need to avoid the injury that the law prohibiting killing the deer without a permit seeks to prevent. *See State v. Matthews, supra,* 30 Or App at 1136. Once the defense is properly raised, the state has the burden of disproving it beyond a reasonable doubt. ORS 161.055(1);

---

[4] The trial court instead correctly instructed the jury:

"Nothing in the wildlife laws is intended to prevent any person from taking any wildlife that is damaging land that he owns or lawfully occupies or is damaging livestock or agricultural crops on such land. However, no person shall take any game mammal in this manner unless he first obtains a permit for such taking from the State Fish and Wildlife Commission."

ORS 161.190; *State v. Olson, supra,* 79 Or at 305.[5]

■　　　We agree with the trial court that defendant was not entitled to a choice of evils instruction. Even if it was necessary for defendant to kill the deer to protect his property, there is no evidence in the record from which the jury could infer that it was necessary for him to kill the deer without a permit under ORS 498.021 to do so. Defendant did not even seek a permit. The only reason in the record for his failure to do so is that he did not want to have to skin, dress and dispose of the deer. That explanation is insufficient as a matter of law to raise a question of fact as to whether it was *necessary* for him to kill the deer without a permit. The trial court correctly refused to give the choice of evils instruction.

■　　　One final matter remains. Defendant argues that the trial court erred in refusing to give the following instruction:

> "In this case there is a charge of wasting a game animal. If you find defendant was justified in killing the deer, then you must find him not guilty of wasting the deer."

His theory is:

> "Since [defendant] is justified in killing the deer he cannot be held responsible for wasting them[, because t]he killer of a wild animal receives title when he reduces the animal to his possession. Fish and Game, 35 Am Jur sec. 2."

Even if defendant is correct as to "title" to the deer, we do not agree that someone who has title to a deer cannot waste it. OAR 635-65-750(2) makes it unlawful to waste any game mammal or parts thereof, *without respect to* ownership of the animal. Thus, even if defendant had been justified in killing the deer, the trial court would have been correct in refusing to give the instruction. The trial court was even more clearly correct in this case, because defendant was not entitled to the choice of evils defense.

　　　Affirmed.

---

[5] Although defendant's special requested instruction eight stated these principles of law relatively accurately, his special requested instruction six is an incomplete statement of the law, and the trial court correctly refused to give it for that reason. *See State v. Wilhelm,* 55 Or App 168, 171, 637 P2d 1294 (1981).