**UNITED STATES of America, Plaintiff,**

v.

**Billy J. DARST, Defendant.**

**No. 89–10041–01.**

United States District Court,
D. Kansas.

Nov. 15, 1989.

Billy Joe Darst, Little River, Kan., pro se.

Thomas D. Arnhold, Hutchinson, Kan. (on appeal) for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's appeal of his conviction of taking migratory birds, in particular great horned owls, in violation of 16 U.S.C. § 703 and 50 C.F.R. § 21.11. Defendant's appeal of his conviction before the Magistrate is subject to the same scope of appeal rules governing an appeal of a district court judgment to a court of appeals. Rules of Procedure for the Trial of Misdemeanors before United States Magistrates, Rule 7(e). The court will decide the case on the briefs, as the legal issues have been adequately addressed in the parties' memoranda and the court does not believe oral argument would significantly aid the decision of this appeal.

On October 1, 1988, Jerry Almquist, a conservation officer with the State of Kansas, visited the defendant's residence and

observed a great horned owl in a leg trap. Mr. Almquist told defendant that taking or killing great horned owls is illegal and that he should call Mr. Case Vendel, a federal game officer, to inquire about a permit for trapping owls if they were killing his chickens. On February 20, 1989, Mr. Almquist returned to defendant's residence and saw another great horned owl trapped on a different pole. Defendant informed Mr. Almquist that he had set four traps on four different poles in order to protect his chickens and that the federal agent was never contacted about a permit.

Defendant represented himself at the trial held on May 12, 1989. He admitted in his testimony that he trapped and killed the great horned owls on both occasions and that he had not contacted federal agent Vendel nor obtained a permit from him. Defendant stated that his authority for killing the owls came from his constitutional right to defend his property.

The Magistrate found defendant guilty and fined him $125 and assessed costs of $25. Defendant appeals on the following legal issues: (a) whether the great horned owl is a properly designated migratory bird; (b) whether the statute is unconstitutionally broad for including as violations the defendant's actions taken in defense of his property; and (c) whether 16 U.S.C. § 703 is unconstitutionally vague in that the term, "migratory bird," is not adequately defined except by regulation, 50 C.F.R. § 10.13, which is excessively broad.

The Migratory Bird Treaty Act (MBTA), 16 U.S.C. § 703 *et seq.*, was passed in 1918 to give force and effect to a 1916 treaty between the United States and Great Britain entered "for the protection of migratory birds." The Supreme Court upheld the constitutionality of the MBTA in 1920. *Missouri v. Holland,* 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920). The MBTA was later expanded to include conventions for the protection of birds entered by the United States with the countries of Mexico and Japan. The convention with Mexico provides that other migratory birds may be added later upon the agreement of the Presidents of both countries. *United*

*States v. Richards,* 583 F.2d 491, 493 (10th Cir.1978); *United States v. Blanket,* 391 F.Supp. 15, 18 (W.D.Okla.1975). The protected migratory birds are listed in 50 C.F.R. § 10.13 which "does not enlarge or purport to enlarge the Conventions or extend the scope of the Act to any bird not included in the Conventions." *Blanket,* 391 F.Supp. at 19. Among the list of protected birds is the great horned owl.

Defendant first contends that the great horned owl is not a migratory bird and, therefore, he did not know it was protected under the MBTA. This contention is also tied into defendant's other issue of whether 16 U.S.C. § 703 is unconstitutionally vague in not defining a migratory bird except by regulation. It would be proper for this court to decline consideration of these issues as they were not properly presented to the trial court. *See United States v. Mebane,* 839 F.2d 230, 232 (4th Cir.1988). In fact, the record shows plaintiff argued only before the Magistrate that the great horned owl, was a "protected" bird but was not an endangered species. (Tr. 50). This oral argument obviously has no relevance to the MBTA.

■ The Secretary of Interior is authorized by 16 U.S.C. § 704 to promulgate regulations regarding who may take or possess migratory birds and under what circumstances. Section 703 is prefaced with correlating language, as follows: "[u]nless and except as permitted by regulations made as hereinafter provided...." By reading § 703 in conjunction with § 704, a person is adequately alerted that applicable regulations specify what conduct is prohibited and what migratory birds are protected. Neither the MBTA nor its attendant regulations are so vague that a person of ordinary intelligence would not reasonably know what conduct is prohibited under these provisions. *See United States v. Brandt,* 717 F.2d 955, 957 (6th Cir.1983).

■ A defendant in a criminal case cannot collaterally attack the Secretary's determination that a given species of birds needs protection, as long as the regulation promulgated to that end is facially valid. *United States v. Gigstead,* 528 F.2d 314,

288

317 (8th Cir.1976). The term, "migratory bird," is defined in 50 C.F.R. § 10.12 as any bird which belongs to a species listed in § 10.13. The court has not been provided any reason to question the listing of the great horned owl in § 10.13 as the proper designation of a species protected by the terms of the controlling treaties. Defendant's legal issues (a) and (c) are without merit.

Defendant argues that the statutes and regulations are unconstitutional if they penalize someone for killing protected wildlife when the killing is otherwise justified under circumstances of defense of property. Defendant relies upon the general rule stated at 35 Am.Jur.2d Fish and Game § 37 (1967), that "a statute forbidding the killing of game under penalty does not apply to a killing which is necessary for the defense of person or property." The defendant also discusses several of the state court decisions cited in 35 Am.Jur.2d § 37 for support of the above general rule.

 Defendant's argument is essentially that his right to defend his property is absolute and cannot be subjected to any governmental regulation. First, defendant has not cited any authority for a federal constitutional right, absolute or not, to defend his property from federally protected wildlife. The Ninth Circuit has recently held that the U.S. Constitution does not expressly or implicitly recognize a right to kill federally protected wildlife in defense of property. *Christy v. Hodel*, 857 F.2d 1324, 1329–1330 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989). *See generally Mountain States Legal Foundation v. Hodel*, 799 F.2d 1423, 1428 (10th Cir.1986) (en banc), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). (No case recognizing such a right under the U.S. Constitution). Second, defendant has not attacked the congressional authority for enacting provisions which protect certain species of birds and for allowing regulations which balance the interests of landowners against the public interest in wildlife. The regulations at issue do not forbid all manners of defending one's property

against destruction from federally protected wildlife. Rather than allowing landowners alone to decide whether a killing of protected wildlife is necessary, the regulations require landowners to seek the assistance of a governmental official who is expected to act in the public interest. *See Christy v. Hodel*, 857 F.2d at 1321; *State v. Webber*, 85 Or.App. 347, 350–51, 736 P.2d 220 (1987). In the absence of a showing that these regulations constitute an unreasonable restraint, defendant's defense of property argument fails. *See Webber*, 736 P.2d 220. Defendant has no unconditional or absolute right to kill federally protected birds in defense of his property.

The Magistrate's finding is supported by the evidence, and the defendant's legal issues are without merit.

IT IS THEREFORE ORDERED that defendant's conviction is affirmed.