Submitted May 25, conviction for first-degree manslaughter reversed and remanded, remanded for resentencing, otherwise affirmed August 23, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DUSTIN ALLEN BROWN,
*Defendant-Appellant.*

Yamhill County Circuit Court
19CR42871; A177027

536 P3d 1069

Defendant appeals from a judgment of conviction for first-degree manslaughter and felon in possession of a firearm. On appeal, defendant challenges only his conviction for manslaughter, arguing that the trial court plainly erred by failing to instruct the jury on the "initial aggressor" limitation on the defense of self-defense. *Held*: The trial court plainly erred when it failed to instruct the jury on the initial aggressor limitation to self-defense when the state intended to rely on that limitation. Because it was the state's obligation to disprove self-defense and to ask for an instruction on the limitation to that defense, and because a jury must be instructed on all matters of law necessary for its verdict, the prosecutor who invoked the limitation was required to concomitantly seek the corresponding jury instruction.

Conviction for first-degree manslaughter reversed and remanded; remanded for resentencing; otherwise affirmed.

Ladd J. Wiles, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Conviction for first-degree manslaughter reversed and remanded; remanded for resentencing; otherwise affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for first-degree manslaughter and felon in possession of a firearm. On appeal, defendant challenges only his conviction for manslaughter, arguing that the trial court plainly erred by failing to instruct the jury on the "initial aggressor" limitation to a claim of self-defense. *See* ORS 161.215(1)(b) (describing defense and its limitations). We agree with defendant that the trial court plainly erred and, cognizant of the fact that we must exercise our discretion with "utmost caution," *see State v. McKinney/Shiffer*, 369 Or 325, 333, 505 P3d 946 (2022), we do so here and reverse.[1]

We review the facts "in the light most favorable to the establishment of the facts necessary to require the instruction." *Ossanna v. Nike, Inc.*, 365 Or 196, 199, 445 P3d 281 (2019). Defendant was walking his bike on a wooded path in McMinnville, Oregon, where he encountered the victim. Defendant and the victim had a brief interaction, which culminated in defendant shooting and killing the victim. A house doorbell camera from a residence across the street from the wooded area captured some (largely indiscernible) audio evidence of the interaction between defendant and the victim while in the woods. Although largely indiscernible, that recording reflects that a verbal interaction between defendant and the victim lasted only a few minutes before two shots could be heard, about 11 seconds apart. The victim could be heard yelling at defendant to "get the fuck out of here." Video from the doorbell camera then shows defendant backing out of the woods towards the street, followed by the victim. Defendant then fired a third shot that struck the victim in the torso, leading to his death. Defendant fled the area. Police arrested him shortly thereafter.

After his arrest, defendant admitted to police during an interview that he shot the victim and explained that he did so because the victim was acting aggressively and erratically. Defendant told police that, after he first noticed the victim on the path and began to walk away, the victim stood up and "stomped" towards defendant, yelling and hitting

---

[1] Our resolution of defendant's first assignment of error obviates the need to address the second, which he makes in the alternative to the first.

himself in the head. Defendant said that he backed up out of the wooded area and told the victim to stop. The victim did not, and continued to walk towards defendant with clenched fists, yelling "What the fuck did you say?" and "Get the fuck out of here." Defendant explained to police that he asked the victim "what's going on" several times and pleaded with the victim to stop advancing; when he did not, defendant drew his gun. The victim continued towards defendant. According to defendant, he then grabbed his bike, and the victim continued to move towards him. He told the victim to stop, and, when the victim was about 16 feet away from defendant, defendant fired his gun to the right of the victim. The victim again continued towards defendant, and defendant fired a second time, again to the right of the victim. Again, the victim walked further towards defendant, and defendant fired a third shot, which hit the victim and ultimately killed him. Defendant admitted that he was high on methamphetamine during this altercation.

The state charged defendant with, among other crimes, murder and felon in possession of a firearm. Before trial, defendant gave notice of his intent to rely on ORS 161.209, which provides that a person is justified in using physical force against another person for self-defense against "[w]hat the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose." ORS 161.209.

The state submitted its proposed jury instructions, including a uniform jury instruction about the defense of self-defense. It also included an instruction on one limitation on the use of deadly physical force, namely, that a defendant cannot use deadly physical force on another unless they reasonably believe that the other person was using or was about to use unlawful deadly physical force against the defendant or was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against the defendant. *See* ORS 161.219 (so providing).

At the close of the state's evidence, the court reviewed the proposed instructions. For the first time in the trial, the

prosecutor indicated that she intended to argue that the defendant was the initial aggressor in the confrontation:

> "Lastly, Your Honor, in my closing I plan to touch on principles of the initial aggressor concept, and also what in an altercation would constitute a misdemeanor or felony. Just putting defense on notice in case he requested additional instructions.

> "For example, I plan to make the statement that yelling at somebody to leave is no crime, causing somebody physical injury with a weapon is a felony, so that the jury, when reading the limitations of self-defense has some understanding of the difference between felonious conduct and other conduct."

The prosecutor's reference to "initial aggressor" was a reference to ORS 161.215. That statute provides that a person is not justified in using physical force on another person if the person is

> "the initial aggressor, except that the use of physical force upon another person under such circumstances is justifiable if the person withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force."

ORS 161.215(1)(b).

After the prosecutor indicated her intent to rely on the initial aggressor limitation to self-defense, defense counsel did not object or request any additional instructions.

In advance of closing arguments, the court instructed the jury on self-defense and on the limitation on the use of deadly physical force. It did not instruct the jury on the initial aggressor limitation to self-defense.

In accordance with her stated intentions, during the state's closing argument, the prosecutor told the jury that a person is justified in using physical force upon another person to defend himself but that that principle has a "[c]aveat," namely, that "[t]he person who starts the fight can't use self-defense to justify further escalation of the fight. Because who had the right to self-defense in that situation? The person who didn't start the fight." She continued:

"[F]rom the evidence that's produced, who do you find is the initial aggressor? Because the initial aggressor can't claim self-defense. The other person can." She summarized:

> "So, what it boils down to is this: If [defendant] is not the initial aggressor and he had a claim of self-defense to make or, therefore, had a valid self-defense claim, did he do so in response to [the victim's] commission or attempted commission of a felony?
>
> "* * * * *
>
> "So I submit to you that there is strong evidence that [defendant] is the initial aggressor and, therefore, had no reason to brandish his firearm, no reason to shoot [the victim], and self-defense fails."

In his closing argument, defense counsel asserted that there was no evidence that defendant was the initial aggressor. He told the jury that the state had the burden of proving "that [defendant] was the aggressor, and that's one of the steps they're addressing of self-defense, and they haven't proven that." The jury acquitted defendant of murder but found him guilty of the lesser-included offense of first-degree manslaughter, as well as felon in possession of a firearm.

On appeal, defendant challenges his conviction for first-degree manslaughter. Defendant contends that the failure to provide a jury instruction on the initial aggressor limitation is plain error and asks us to exercise our discretion to correct the error. To qualify for plain error review, the error must be one of law, it must be obvious and not reasonably in dispute, and it must be apparent on the record and not require us to choose between competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). The parties do not dispute, and we conclude, that the error is one of law and is apparent on the face of the record. Thus, whether the lack of an instruction on the limitation on self-defense amounts to plain error depends upon whether we can say that the legal point is obvious and not reasonably in dispute.

For its part, the state, while acknowledging that a trial court commits plain error if it fails to instruct the jury

on the material elements of the crime and that the state bears the burden of disproving self-defense, argues that is not obvious that a court commits plain error by failing to instruct the jury on *limitations* to self-defense. For his part, defendant points to several statutes and cases that, in his view, establish that the legal point is not reasonably in dispute. We begin with those.

ORCP 59 B requires a court to "state to the jury all matters of law necessary for its information in giving its verdict." ORCP 59 B; *see also* ORS 136.330(1) (applying ORCP 59 B to criminal cases). We have thus held that it is error when the jury instructions "give the jury an incomplete and thus inaccurate legal rule to apply to the facts[.]" *State v. Abram*, 273 Or App 449, 452, 359 P3d 431 (2015). We have also held that a trial court commits plain error when it fails to instruct the jury on all material elements of a crime. *State v. Gray*, 261 Or App 121, 130, 322 P3d 1094 (2014). Additionally, when a defense—like self-defense—is "raised," a trial court errs in failing to instruct the jury that the state bears the burden to disprove the defense where defendant puts it at issue. *See Abram*, 273 Or App at 456; ORS 161.055(1) ("When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at trial, the state has the burden of disproving the defense beyond a reasonable doubt."). A court must thus instruct the jury on all defenses that the defendant raises. *See State v. Dahrens*, 192 Or App 283, 285, 84 P3d 1122 (2004) ("A defense to a criminal charge must be presented to a jury through a jury instruction if there is any evidence from which the jurors could infer that the required elements of the defense are present." (Internal quotation marks and citation omitted.)); *see also State v. Webber*, 85 Or App 347, 351, 736 P2d 220, *rev den*, 304 Or 56 (1987) ("A criminal defendant is entitled to instructions on all issues of law arising from the evidence[.]").

We have also addressed when it is error not to instruct the jury on a limitation to a defense. In *State v. Freeman*, 109 Or App 472, 476, 820 P2d 37 (1991), the trial court denied the defendant's requested jury instruction on self-defense and the defendant appealed. The state argued

in part that the defendant's requested instruction was incomplete because it failed to include the limitations on self-defense. *Id.* at 475. We began by observing that once a claim of self-defense is raised, the state has the burden of disproving it beyond a reasonable doubt. *Id.* at 475-76. We explained that "[o]ne means of disproving self-defense is to prove that one or more of the limitations in ORS 161.215 is present." *Id.* at 476. Because the defendant had no burden to disprove the limitations, we concluded that he had no burden to submit the instructions on them; if the state believed that "there was evidence proving one or more of the limitations in ORS 161.215, it was obliged to request an instruction conveying that theory to the jury." *Id.*

We ultimately agree with defendant that ORCP 59 B, in combination with the cases that establish that it is the state's burden to request instructions on self-defense—including limitations on self-defense—establish that that the error here is obvious and not reasonably in dispute. From the statutes and cases just discussed, several principles are apparent:

- A jury must have instructions on all matters of law necessary for its information in giving its verdict, ORCP 59 B; ORS 136.330(1);

- It is the state's burden to disprove a defendant's claim of self-defense, *Abram*, 273 Or App at 456; ORS 161.055(1); and

- If the state contends that a limitation on a claim of self-defense is supported by the evidence, it is obligated to request an instruction conveying that theory to the jury, *Freeman*, 109 Or App at 476.

From that, we conclude that it is obvious and not reasonably in dispute that if, as here, the state intends to rely on the initial aggressor limitation to self-defense (and if the evidence supports that theory), the trial court must instruct the jury on that limitation. Stated slightly differently, because it is the state's obligation—not a defendant's—to disprove self-defense and to ask for an instruction on the limitation to self-defense, and because a jury must be instructed on all matters of law necessary for its verdict, a prosecutor who

invokes the exception must concomitantly seek the corresponding jury instruction. The trial court therefore erred by not giving the initial aggressor instruction when the state intends to rely on that limitation, particularly where, as here, the prosecutor announces their intent to rely on the initial aggressor theory and then suggests, incorrectly, that it is defendant's burden to seek any additional instructions.

Next, we must consider whether the error was harmless and, if not, whether we will exercise our discretion to correct it. *State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023). To assess whether error is harmless, we consider "the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Ashkins*, 357 Or 642, 660, 357 P3d 490 (2015). Defendant argues that the error is not harmless because, absent the necessary instruction, the jury was misinformed about the law because the prosecutor's description of the initial aggressor limitation was incomplete. He observes that the initial aggressor limitation, while generally not permitting someone who is the initial aggressor to claim self-defense, does allow a claim of self-defense if the person was the initial aggressor but then "withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force." *See* ORS 161.215(1)(b).[2] In her closing, the prosecutor noted that defendant could not claim self-defense if he were the initial aggressor but did not explain that self-defense would be viable if defendant had withdrawn from the encounter: "[T]he initial aggressor can't claim self-defense. The other person can."

We agree with defendant that that statement was incomplete and, given the evidence in the case—particularly the evidence that defendant may have been backing away from the victim at the time the fatal shot was fired—we cannot say that there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). That holds particularly true given that there

---

[2] The state offers no argument about whether the error was harmless.

was evidence that defendant may not have been the initial aggressor and that even if he was, he had retreated, which could give rise to an inference that he intended to withdraw from the encounter.

Although we conclude that the error is not harmless, "our assessment of where [the error] falls on the spectrum of 'likelihood' of having affected the verdict can be an important consideration to the exercise of discretion." *Horton*, 327 Or App at 264. The likelihood that the error affected the outcome goes to its "gravity" and to "the ends of justice." *Id.*; *see also State v. Inman*, 275 Or App 920, 936, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) ("[T]he error in this case was not particularly grave, in terms of its likelihood of affecting the verdict[.]"); *State v. Pergande*, 270 Or App 280, 285-86, 348 P3d 245 (2015) (citing "the ends of justice and the gravity of the error" in exercising discretion to correct a plain error that was "likely" harmful and carried a "significant risk" that it affected the verdict).

This is a case in which it is appropriate for us to exercise our discretion to correct the error. As we explained above, we cannot say that there was little likelihood that the error affected the verdict. It was the state, and not defendant, that raised the issue of initial aggressor, and given the timing of it doing so (late in the trial), defendant had limited opportunity to address the issue. And it was the state, not defendant, who bore the burden of asking for instructions if it chose to rely on the initial aggressor limitation. Additionally, as we have noted in a similar circumstance, although defendant could have prevented the problem by requesting a further instruction, which weighs against exercising our discretion, defendant's challenged conviction is for serious a felony. *See State v. Pervish*, 202 Or App 442, 466, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006) (holding that unpreserved instructional error was plain and exercising our discretion to correct it, in part because of the seriousness of the convictions); *see also Gray*, 261 Or App at 132 (concluding that gravity of the error compelled exercise of discretion to correct plain instructional error, because the trial court's failure to instruct the jury as to culpable mental state was not harmless, and the

defendant's challenged convictions included "serious felonies"—convictions for first-degree rape). What is more, we have often chosen to exercise our discretion in the interest of judicial economy and to forestall future post-conviction proceedings, yet another reason that guides our discretion here. *See, e.g.*, *State v. Simkins*, 263 Or App 459, 461-62, 330 P3d 1235 (2014) (exercising discretion to correct plain error in the interest of judicial economy and to forestall future post-conviction proceedings).

In choosing to exercise our discretion, we reject the state's contention that defendant may have had a strategic reason for not objecting or seeking the initial aggressor instruction himself. As the Supreme Court recently explained, where the record reflects that a defendant "invited," "encouraged," or "even sought the court's ruling" that the defendant then claims is plain error, an appellate court will not exercise its discretion to correct the error. *State v. Chitwood*, 370 Or 305, 324-25, 518 P3d 903 (2022) (describing the circumstances from which it is reasonable to conclude that defense counsel acted strategically). Also significant to the court's decision to correct the plain error in *Chitwood* was the fact that "even if defendant may have benefited by remaining silent and failing to object," the defendant's "advantage, if any, occurred at the instigation of the prosecutor[.]" *Id.* at 325. In reaching that conclusion, the court surveyed previous cases in which the record reflected a strategic decision on a defendant's part. *Id.* at 324. For instance, in *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007), the Supreme Court declined to exercise its discretion where the defendant acted with "apparent encouragement of the judge's choice" with respect to a departure sentence. And in *State v. Steen*, 346 Or 143, 154, 206 P3d 614 (2009), the court declined to exercise its discretion to reverse for plain error where "defense counsel stipulated to the procedure that the state and the trial court followed." *See also State v. Serrano*, 355 Or 172, 188, 324 P3d 1274 (2014), *cert den*, 576 US 1037, 135 S Ct 2861, 192 L Ed 899 (2015) (declining to reverse for plain error because trial court had consulted the parties before crafting a response to jury questions and the defendant had agreed with answers given).

Applying those precepts here, the record does not support an inference that defendant "invited or encouraged" the error. To the contrary, it was the prosecutor who raised the issue (and did so in incomplete fashion). Even if, as in *Chitwood*, defendant may have had a reason to remain silent (which, as we explain below, is unlikely), the record does not demonstrate that defendant encouraged, agreed to, stipulated to, or otherwise invited the omitted jury instruction.

To be sure, as the state observes, the initial aggressor limitation is a limit on the ability of a defendant to claim self-defense, and thus a defendant might not want an instruction that highlights that fact. Yet it is equally true that the limitation contains within it another limitation that permits a defendant to retreat from being the initial aggressor, which—particularly given defendant's version of events—could have benefitted defendant in this case. Moreover, we can think of no strategic reason why defendant would want the jury to be instructed on one limitation on self-defense (the use of deadly physical force) and not another (initial aggressor), particularly where, as here, there was evidence that defendant may have been attempting to withdraw from the encounter. We therefore exercise our discretion to correct the error.

Conviction for first-degree manslaughter reversed and remanded; remanded for resentencing; otherwise affirmed.